[No. 35310.    Department One.    October 13, 1960.]

LUCAS FLOUR COMPANY, *Respondent*, v. LOCAL 174, TEAM-STERS, CHAUFFEURS & HELPERS OF AMERICA, *Appellant*.[1]

[1]Reported in 356 P. (2d) 1.

*MacDonald, Hoague & Bayless,* for appellant.

*Allen, DeGarmo & Leedy,* for respondent.

HUNTER, J.—This is an appeal from a judgment for the plaintiff in an action for damages, which arose out of the following facts.

The plaintiff, Lucas Flour Company, is a Washington corporation, principally engaged in the wholesale distribution of flour. The plaintiff employed members of the defendant, Local 174, Teamsters, Chauffeurs & Helpers of America, with whom the plaintiff had entered into a collective bargaining agreement on April 1, 1955.

In 1953, the plaintiff had employed one Melvin T. Welsch, who first worked as a truck driver and then as a warehouseman. His work was unsatisfactory in both capacities and on more than one occasion only the intervention of the union forestalled his discharge. On May 12, 1958, Welsch started a fork-lift truck, used in the plaintiff's warehouse, while it was in gear and caused it to run off the end of the warehouse floor onto the railroad tracks four feet below. The truck was extensively damaged, and Welsch was injured.

While at home recovering from these injuries, **Welsch** received the following memo from the plaintiff:

". . . The enclosed check covers your second week of vacation. We have decided that it would be better to take next week off for part of your vacation and than [sic] should we be busy the following week I will call you, otherwise take the second week of your vacation and rest. . . ."

On the same day, May 23rd, Welsch went to see Floyd Anderson, business agent and vice-president of Local 174, and stated that he was ready to return to work. Welsch obtained a written release from his doctor pursuant to Anderson's advice. He presented the release to the secretary-treasurer of the plaintiff corporation, who told him to take the week off and that they would call him if they were busy the following week. Welsch reported this to Floyd Anderson who called the plaintiff's plant, and on the morning of May 27, 1958 sent a business agent to the plant. The business agent was informed that Welsch had been discharged for unsatisfactory work, and he reported this to Floyd Anderson by telephone. The business agent then called the plaintiff's employees out on strike and the plant was picketed. The picketing continued until June 4, 1958, when it was terminated by a temporary injunction issued by the superior court for King county. On September 11, 1958, the matter of Welsch's discharge was submitted to arbitration, and on November 11, 1958 the arbitrators made the following findings and award:

"1. That the work of Melvin T. Welsch was unsatisfactory prior to his discharge, in that he failed to carry out his prescribed duties of keeping the warehouse clean and rotating the stock of merchandise; during his absences due to illness, he failed to notify the employer as to the reasons or when he expected to return; and failed to exercise proper care in the operation of a fork-lift truck, by starting the same while it was in gear and causing it to fall a distance of four feet from the warehouse floor to the railroad siding, thereby endangering his life and causing extensive damage to the truck.

"2. That such unsatisfactory work was the reason for Melvin T. Welsch's discharge on May 27, 1958.

" . . .

"AWARD

"The Board hereby orders that the discharge of Melvin T. Welsch on May 27, 1958, was justified and that he is not entitled to reinstatement with his former employer, Lucas Flour Company."

The action for damages came on for trial on March 16, 1959, both parties stipulating that the findings of the arbitrators were binding upon them. The trial court took additional evidence on matters which it considered had not been covered by the findings of the arbitrators, and at the conclusion of the trial entered judgment awarding damages, in the amount of $6,501.60, to the plaintiff. The defendant appeals.

The appellant, Local 174, contends the trial court was without jurisdiction because the National Labor Relations Board had exclusive jurisdiction over the controversy:

Appellant cites the recent case of *San Diego Bldg. Trades Council v. Garmon*, 359 U. S. 236, 3 L. Ed. (2d) 775, 79 S. Ct. 773 (1959), wherein the United States supreme court said:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act [61 Stat. 140], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. . . .

"At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. . . ."

In that case, the cause had proceeded through the courts on the assumption that it was an unfair labor practice. The instant case is not one in which it is clear, nor in which it may be fairly assumed, that the activity is protected by

§ 7 or prohibited by § 8 of the National Labor Relations Act. On the contrary, a reading of the sections makes it clear that the activities here involved fail to come within the purview of either of these sections. Section 7 of the act, 29 U. S. C. A., § 157, provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, . . ."

The collective bargaining agreement in force between these parties contained the following provision:

"The Employer reserves the right to discharge any man in his employ if his work is not satisfactory."

The strike in the instant case was in protest against the discharge of an employee for admittedly unsatisfactory work; in clear violation of the agreement. It was an attempt to force the respondent to forego the exercise of a right expressly provided by the agreement. It could scarcely be argued that the same provision of the act, which gives the right to bargain collectively and to enter into collective bargaining agreements, also gives the right to ignore such agreements, or gives the right to do anything which would nullify the effect of such agreements.

The question then remains whether this was a strike which would constitute an unfair labor practice under § 8 of the act, 29 U. S. C. A., § 158, which provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: . . . or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation

fees uniformly required as a condition of acquiring or retaining membership;

"(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees . . .

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified . . . (C) forcing or requiring any employer to recognize or bargain with a particular labor organization . . . if another labor organization has been certified as the representative . . . (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board . . .

"(5) to require of employees covered by an agreement authorized under subsection (a) (3) of this section the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory . . .

"(6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed."

From our reading of this section we cannot say that it might be "fairly assumed" that the instant case falls within the purview of any of the subsections of 29 U.S.C.A., § 158(b). Therefore, the test announced in *San Diego Bldg. Trades Council v. Garmon, supra,* when applied to the present facts, does not militate against state court jurisdiction.

However, this is not the sole basis for concluding that this is a case properly within the ambit of state jurisdiction. The respondent brought this action in the superior court of this state to recover for damages incurred as a result of appellant's attempt to coerce the respondent into foregoing his exercise of a contractual right. In *Selles v. Local 174 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 50 Wn. (2d) 660, 314 P. (2d) 456 (1957), this court said:

"We know that the Federal government has pre-empted the field as to many phases of labor relations, but not as to all. We cannot find from the act, as interpreted by the supreme court, that it was the intention of Congress to deprive a workman of his time-honored right to sue in his own state court for damages resulting from a common-law tort and to relegate him, for sole relief, to this particular Federal agency.

"Under the facts of this case, there is no 'resounding collision' between the remedies afforded under the act and in the state court. Under the one, the board shall issue a cease and desist order and *may* order reinstatement, with or without back pay. Under the other, the state court may not enjoin or issue a cease and desist order (except in case of violence), and may not order back pay, but it can award damages for a common-law tort. The relief granted by the board, with the exception of the cease and desist order, is entirely discretionary and is exercised to effectuate the policies of the act and, in particular, to prevent unfair labor practices. The relief granted in a common-law tort action is compensation to a plaintiff for damages sustained by reason of the tort.

"Where the relief granted under state procedure is so similar to that granted under the act that a conflict ensues between the two, the conflicting state procedure is excluded. Where such relief is not similar to that afforded under the act, there is no conflict between the state and Federal remedies, and the state procedure survives. . . . Respondent's right to damages, in this case, for a common-law tort, differs from any remedy which the board has power to provide. The state court, therefore, had jurisdiction to entertain the action."

We believe the theory of the *Selles* case is applicable whether the damages are the result of tortious interference

with a party's employment or business or the result of depriving that party of a contractual right. It would be unreasonable to conclude that Congress intended to preempt the field of labor relations to such an extent that any party, employer, employee or labor organization would be left without a means of obtaining compensation for damages suffered.

Appellant contends, however, that § 301 of the Labor Management Relations Act, 29 U.S.C.A., § 185, has supplanted common-law interpretation and enforcement of collective bargaining agreements.

Section 301 of the Labor Management Relations Act confers jurisdiction upon the lower federal courts to entertain suits based upon violations of labor agreements. We find nothing in the plain language of this statute which can reasonably be interpreted as pre-empting state jurisdiction, or as affecting it by limiting the substantive law to be applied.

The appellant next contends that the picketing involved in the instant case was not in violation of the collective bargaining agreement, unless the agreement expressly or impliedly contained a no-strike provision. We disagree. The collective bargaining agreement existing between the parties to this lawsuit created rights and duties on both sides. One of the principal benefits obtained by entering into a collective bargaining agreement is that each party's rights are clearly defined and established, and in the fact that each may freely and safely exercise these rights. By virtue of the agreement here in question the respondent had the right to discharge any employee for unsatisfactory service. If the appellant could bring coercive economic pressure to bear whenever the respondent should attempt a proper exercise of this right, the collective bargaining agreement would have been merely a worthless gesture, a document to be treated by both parties as though it had never been executed.

The collective bargaining agreement is the cornerstone of successful labor management relations. To hold that either party to such an agreement can disregard its express terms

without incurring liability for the consequences would annihilate all progress in this area with a single stroke of the pen. Collective bargaining agreements would be unenforcible by either side, and would create rights without remedies to protect these rights.

The appellant next contends that this court is not justified in sustaining jurisdiction on the basis that the picketing was in breach of contract since the trial court based its judgment solely on tort liability and made no finding of a breach of contract.

From the pleadings, the theory is established that the respondent was injured by the appellant's breach of contract and this theory is clearly supported by the record. Therefore, the rule that the judgment of the trial court will be sustained on any theory established by the pleadings and supported by the proof is applicable. *Lundberg v. The Corporation of Catholic Archbishop of Seattle*, 55 Wn. (2d) 77, 346 P. (2d) 164 (1959); *Guerin v. Thompson*, 53 Wn. (2d) 515, 335 P. (2d) 36 (1959).

Finally, the appellant contends the evidence of lost profits was too speculative and uncertain to show the respondent's damages with reasonable certainty.

We are satisfied that there is substantial evidence in the record to support the finding of the fact of damage to the respondent's business with reasonable certainty, and the amount of damages awarded was well within the range of the evidence introduced.

Finding no merit in appellant's other assignments of error, the judgment of the trial court must therefore be affirmed.

It is so ordered.

WEAVER, C. J., MALLERY, HILL, and FOSTER, JJ., concur.