[No. 44335. En Banc. June 16, 1977.]

TRUST FUND SERVICES, *Respondent,* v. WALTER HEYMAN, *Petitioner.*

*Eugene R. Nielson* (of *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*), for petitioner.

*Duane D. Kiel* and *Donaldson & Kiel, P.S.*, for respondent.

ROSELLINI, J.—This action was brought in Snohomish County Superior Court to recover payments allegedly due the respondent, Trust Fund Services, as assignee of a union trust fund. The court gave judgment against the employer, Walter Heyman, petitioner here, for sums found to be due under an agreement with the union which he signed in 1971. The respondent was unable to establish to the court's satisfaction a contention that payments were also due under an alleged 1969 agreement.

The petitioner had tendered as a defense to the action a contention that the union did not represent a majority of the employees at the time the contract was signed. It was

the petitioner's theory that for this reason, the contract involved an unfair labor practice under 29 U.S.C. § 158(a) and (b) and was consequently invalid. The Superior Court refused to consider this defense.

While the Superior Court action was pending, the petitioner instituted a suit against the union in the Federal District Court for the Western District of Washington at Seattle. In that action, it sought to rescind the contract upon the ground that it involved an unfair labor practice, under the same federal statute relied upon in its proposed defense to the state action. The Superior Court denied the petitioner's motion, made thereafter, to continue the state court action until the federal court rendered its decision on the legality of the underlying contract.

After the Superior Court had entered its judgment, the case in federal court was decided (Walter Heyman, d/b/a Thriftmart v. Teamsters Local 38, No. 506–73C2). It is not clear from the record before us whether the union, the defendant in that action, challenged the jurisdiction of the court. The order of that court dated October 24, 1974, does reveal, however, that the union urged that the federal statute of limitations contained in 29 U.S.C. § 160(b) barred the consideration of an unfair labor practice.[1] The court held that this provision applies only in proceedings before the National Labor Relations Board (NLRB). It adopted the Superior Court's finding that there had been no union contract signed in 1969 and further found that the union did not in fact represent a majority of the employees when the 1971 contract was signed. The court granted rescission of the contract.

---

[1] (b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon

No appeal was taken from this judgment. However, while the case was pending in federal court, the union filed a charge against the employer (petitioner here) before the NLRB, based upon his repudiation of the 1971 collective bargaining agreement. The NLRB determined that the agreement was fair on its face and that the statutory period of limitations precluded any showing that the union did not represent a majority of employees. It found that the petitioner had engaged in an unfair practice in repudiating the contract and petitioned the Ninth Circuit Court of Appeals to enforce its remedial order, issued pursuant to 29 U.S.C. § 160(e). A 3–judge panel of that court held that the district court's judgment upon the question of the validity of the contract was res judicata and binding upon the NLRB. Enforcement of the order was denied. *N.L.R.B. v. Heyman,* 541 F.2d 796 (9th Cir. 1976).

In the meantime, both parties to this action had appealed from the Superior Court judgment, and the Court of Appeals had affirmed the judgment with respect to the 1971 agreement and reversed it with respect to the 1969 agreement, holding that the petitioner by his conduct was estopped to deny the existence of such an agreement. The court also reversed a lower court holding that the parties had orally agreed to exclude one employee from the coverage of union contract benefits. *Trust Fund Servs. v. Heyman,* 15 Wn. App. 452, 550 P.2d 547 (1976).

We granted the employer's petition for review. It is his contention here that the Court of Appeals was bound to follow the decision of the federal district court and to hold the 1971 contract invalid. He does not suggest that the

the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six–month period shall be computed from the day of his discharge.

29 U.S.C. § 160(b).

This limitation applies to an NLRB complaint that continuing enforcement of an agreement between an employer and a union, which did not represent a majority of the employees at its inception, is an unfair labor practice. *Local 1424, Machinists v. N.L.R.B.,* 362 U.S. 411, 4 L. Ed. 2d 832, 80 S. Ct. 822 (1960).

judgment was res judicata as between the parties to this suit, but rather that it is controlling precedent in this action. The Ninth Circuit panel decided the case of *N.L.R.B. v. Heyman, supra,* after the Court of Appeals had rendered its decision in this case; and it is urged that that case is also controlling precedent in this court.

■■ We approach the question before us with the following consideration in mind: the law, both federal and state, is concerned with the stabilization of industrial relations, and numerous legislative enactments have dealt with the relations of employers and employees and have sought to forestall and adjust differences between them by the encouragement of collective bargaining, and the settlement of labor disputes through conciliation, mediation, and arbitration. The National Labor Relations Act (NLRA) of 1935, popularly known as the Wagner Act, was amended by the Labor–Management Relations Act of 1947, also known as the Taft–Hartley Act, which was designed to adjust and minimize differences in the rights granted unions, employees, and employers. *N.L.R.B. v. Brooks,* 204 F.2d 899 (9th Cir. 1953), *aff'd,* 348 U.S. 96, 99 L. Ed. 125, 75 S. Ct. 176, 42 A.L.R.2d 1405 (1954).

These labor relations laws are contained in chapter 7 of 29 U.S.C. which is referred to as the Labor–Management Relations Act of 1947.

This law governs the relations of employers and employees in industries and businesses affecting interstate commerce. The petitioner here conducts a retail grocery business. It appears to be agreed by the parties that his business affects interstate commerce and that the NLRA governs the relations between the parties, no challenge having been made to the Court of Appeals' statement to that effect.

The suit before us is one which was brought by a beneficiary to enforce a labor contract. Section 301(a) of the Labor–Management Relations Act of 1947 (29 U.S.C. § 185(a)) gives federal courts jurisdiction over such suits, a jurisdiction which they did not enjoy prior to its enactment.

The established jurisdiction of state courts over such actions was not destroyed by § 301(a) but became concurrent with that of the federal courts. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519 (1962). The United States Supreme Court said in that case at pages 508–09:

> The legislative history makes clear that the basic purpose of § 301 (a) was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations. . . .
>
> The Labor Management Relations Act of 1947 represented a far–reaching and many–faceted legislative effort to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process. It was recognized from the outset that such an effort would be purposeless unless both parties to a collective bargaining agreement could have reasonable assurance that the contract they had negotiated would be honored. Section 301 (a) reflects congressional recognition of the vital importance of assuring the enforceability of such agreements.

State courts must follow the federal law, as fashioned by the federal courts, to effectuate the statutory policy of enforcement of collective bargaining agreements. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962); *Charles Dowd Box Co. v. Courtney, supra; Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912, 77 S. Ct. 923 (1957).

Consistent with this policy of enforcement, the United States Supreme Court has held that the parties to a collective bargaining agreement must express their meaning in unequivocal words before they can be said to have agreed that the union's breaches of its promises should give rise to a defense against the duty assumed by an employer to contribute to a welfare fund meeting the requirements of 29 U.S.C. § 186(c)(5).[2] *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 4 L. Ed. 2d 442, 80 S. Ct. 489 (1960). And the Third

---

[2] 29 U.S.C. § 186 places restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organizations, and to employees or committees of employees.

Circuit Court of Appeals has held that the invalidity of one provision of a collective bargaining agreement will not preclude a trustee from collecting the amount due a welfare and retirement fund with respect to work already performed. *Lewis v. Seanor Coal Co.,* 256 F. Supp. 456 (W.D. Pa. 1966), *aff'd,* 382 F.2d 437 (3d Cir. 1967), *cert. denied,* 390 U.S. 947 (1968). Both of these opinions tacitly, if not explicitly, recognize the principle that such contributions with respect to past labor are in the nature of compensation, the right to which accrues when the work is performed.

The petitioner insists, however, that the respondent is but a third–party beneficiary; that its rights depend on the validity of the underlying contract, and that this contract has been conclusively declared invalid. With respect to the third–party beneficiary concept, the United States Supreme Court in *Lewis v. Benedict Coal Corp., supra,* pointed out that it has little relevance in the labor relations context. Common–law principles relating to the rights of third–party beneficiaries are usually inadequate to settle the complex rights and duties embodied in a collective bargaining contract. We need not decide whether this concept is applicable here, however, for we are convinced, under the established federal law, the underlying contract has not been shown to be invalid as between these parties. While the petitioner contends that the union contract in this case has been conclusively declared invalid by the federal courts, we again draw attention to the fact that he does not suggest that the judgment in those cases is binding on the respondent here as a party or privy to those actions. It is tacitly conceded that neither of those judgments is res judicata as to the respondent. The question remains: Are they the controlling precedent?

---

Section 186(c)(5) makes an exception with respect to payments to trust funds for the benefit of employees and their families and dependents, provided, *inter alia,* that the detailed basis on which such payments are to be made is specified in a written agreement with the employer.

We are of the opinion that they are not. Both the Federal District Court and the Ninth Circuit panel overlooked the fact, and we assume it was because that fact was not drawn to their attention, that the federal district court lacked jurisdiction to set aside the contract, and particularly to set it aside on the ground that an unfair labor practice was involved.

The jurisdiction bestowed upon federal district courts in 29 U.S.C. § 185(a) (section 301(a) of the Labor–Management Relations Act of 1947) is jurisdiction to enforce contracts, not to invalidate them. The section reads:

(a) Venue, amount, and citizenship.

Suits for violation of contracts .between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, . . .

We are cited to no case, other than the one decided by the federal district court in this instance, in which a federal court has rescinded a contract under the authority of section 185. And, as the cases from which we have previously quoted make clear, it was the congressional purpose, in conferring this jurisdiction, to expand remedies for enforcement of collective bargaining agreements. Nothing in the language of the section suggests that it was the congressional intent to give the federal district courts jurisdiction to entertain suit for rescission of such contracts. *See Charles Dowd Box Co. v. Courtney, supra; Local 174, Teamsters v. Lucas Flour Co., supra; Textile Workers Union v. Lincoln Mills, supra.*

■ But assuming that such jurisdiction exists, a court cannot grant rescission on the basis of an alleged unfair labor practice. The NLRB has exclusive original jurisdiction to determine unfair labor practices. *International Longshoremen's Local 1416 v. Ariadne Shipping Co.,* 397 U.S. 195, 25 L. Ed. 2d 218, 90 S. Ct. 872 (1970); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 3 L. Ed. 2d

775, 79 S. Ct. 773 (1959).[3] The Court of Appeals as well as the Superior Court, recognized this principle as it applies to prevent state court consideration of such charges. The Court of Appeals, however, failed to note that it applies with equal force to exclude federal court intervention in such matters. The United States Supreme Court in *San Diego Bldg. Trades Council v. Garmon, supra* at 242–43,[4] said that when an activity is arguably an unfair labor practice under the NLRA, states as well as the federal courts must defer to the exclusive competence of the NLRB. It quoted the following from its opinion in *Garner v. Teamsters Local 776,* 346 U.S. 485, 98 L. Ed. 228, 74 S. Ct. 161 (1953):

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. . . ."

(Citation omitted.)

[3] We have recognized this established principle in *Selles v. Teamsters Local 174,* 50 Wn.2d 660, 314 P.2d 456 (1957); *Lucas Flour Co. v. Teamsters Local 174,* 57 Wn.2d 95, 356 P.2d 1 (1960); *Baun v. Lumber Local 2740,* 46 Wn.2d 645, 284 P.2d 275 (1955); *Mahoney v. Sailors' Union,* 45 Wn.2d 453, 275 P.2d 440 (1954).

[4] *Garmon* held that although the NLRB had declined to exercise jurisdiction, a California state court was precluded by the NLRA from awarding damages to the respondents under state law for economic injuries resulting from the peaceful picketing of their plant by labor unions which had not been selected by a majority of the respondent's employees as their bargaining agents.

There are cases in which the state and federal courts may function, even though unfair labor practices are involved, as where the practice in question results in a breach of the peace, or where a breach of contract is also, and incidentally, an unfair labor practice. The circumstances under which exceptions to the general rule have been found are described in *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 29 L. Ed. 2d 273, 91 S. Ct. 1909 (1971). That suit rested solely on an alleged unfair labor practice, as defined in the NLRA, occurring at the inception of the contract.

The circumstances are: (1) where the Congress has affirmatively indicated that judicial power over conduct arguably protected or prohibited by the act should exist; (2) where the United States Supreme Court cannot, in spite of the force of the policies which the opinion in *Garmon* seeks to promote, conscientiously presume that Congress meant to intrude so deeply into areas traditionally left to local law; and (3) where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes. A footnote in the opinion indicates that a similar exception might arise where the NLRB affirmatively indicates that, in its view, preemption would not be appropriate. It is not suggested that any of these exceptions was applicable in the petitioner's federal court action.

The charge was exclusively within the jurisdiction of the NLRB, and, as that body decided when the matter came before it, the contention was barred by the statute of limitations contained in the act which defined the practice. It was obviously the congressional intent that charges of unfair labor practices should be raised promptly, and that they should be raised before the board, the agency whose knowledge and experience rendered it the best equipped to evaluate the significance and impact of the activity and to fashion a proper remedy.

It is also to be noted that the statute does not make a contract between an employer and a union representing less than a majority of his employees ipso facto void. In a given case a remedy, if any, was evidently intended to be provided, only after the NLRB examined the coercive factors involved, and the effect upon the legitimate interests of the parties. Even the board is not expressly given the power to invalidate such an agreement. However, it has been held that the board has the implied authority to suspend a contract. *See* 48 Am. Jur. 2d *Labor and Labor Relations* § 1039 (1970).

The Supreme Court of Oregon was called upon to decide a case very similar to this in *Corvallis Sand & Gravel Co. v. Hoisting & Portable Eng'rs,* 247 Ore. 158, 419 P.2d 38 (1966), *cert. denied,* 387 U.S. 904 (1967). There, employers brought suits in equity against the union, its pension fund trustees, and its health and welfare fund trustees for rescission of collective bargaining agreements and restitution. The NLRB had previously found that the union was guilty of unfair labor practices and had declared the contracts illegal. The employers sought further relief from the court.

The Oregon Supreme Court, citing United States Supreme Court and other federal cases, held that the NLRB had exclusive authority to determine whether actions of the union were unfair labor practices, and to determine the relief to which the employers were entitled. It further held that § 301(a) of the Labor–Management Relations Act of 1947, giving federal district courts jurisdiction to enforce collective bargaining contracts, did not create in the federal or state courts the right to rescind such a contract.

Likewise, in *Building Serv. Employees, Local 252 v. Schlesinger,* 440 Pa. 448, 269 A.2d 894 (1970), the Pennsylvania Supreme Court, applying federal law, held that an employer's contention that the execution of a collective bargaining agreement was an unfair labor practice, because the union did not represent a majority of the

employees, was for the federal or state labor relations boards with exclusive jurisdiction to find and prevent unfair labor practices, and did not constitute a ground on which the Court of Common Pleas could find the agreement to be invalid.

None of the authorities cited in the Ninth Circuit panel opinion stands for a proposition contrary to these holdings. We must conclude that the decision, overlooking as it did the fact that the federal district court did not have jurisdiction over the subject matter before it, is out of harmony with the language, as well as the policy and purpose of the NLRA and the United States Supreme Court cases which have construed it. The decision of the federal court was concededly not res judicata with respect to the respondent's claim; furthermore, it is not persuasive precedent in this action.

 Upon one aspect of the case, we must agree with the petitioner. He cites *Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir. 1968), holding that, under section 302 of the Labor–Management Relations Act of 1947 (29 U.S.C. § 186), a trust fund agreement is invalid unless it is in writing, and that such an agreement cannot be established by resort to principles of estoppel. See footnote 2. Upon conflicting testimony the trial court found that no agreement was executed in 1969 between the union and the petitioner. It found the petitioner's actions to have been consistent with his testimony that he entered into an oral agreement, not a written agreement. Since the credibility of witnesses was a matter for the trial court's evaluation, its findings upon this matter must be reinstated.

With respect to the 1971 agreement, the decision of the

Court of Appeals is affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACH-TENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.