ARTHUR E. JONES, BRADLEY D. MILLER, AND STEVE F. SOMMERS, FOR THEMSELVES AND FOR ALL OTHER PERSONS SIMILARLY SITUATED, APPELLEES, V. COMMERCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, APPELLEE, OMAHA BUILDING CONTRACTORS EMPLOYERS ASSOCIATION ET AL., INTERVENORS-APPELLANTS.

319 N.W.2d 88

Filed May 7, 1982. No. 44061.

Dean G. Kratz of McGrath, North, O'Malley &

Kratz, P.C., for intervenor-appellant Omaha Building Contractors Employers Association.

David D. Weinberg of Weinberg & Weinberg, P.C., for appellees Jones et al.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

This is an appeal from an action to determine the validity of assignments directing a depositary to distribute portions of a Holiday Trust Fund allocated to the assignors' individual passbook accounts for the payment of assignors' dues and assessments to a labor union.

The appellants, impleaded defendants and employer trustees Cal Solem and George Gilmore, together with intervenor and impleaded defendant Omaha Building Contractors Employers Association (OBCEA), assert, through the brief of OBCEA, that the District Court of Nebraska for Douglas County erred in decreeing the assignments valid and ordering Commercial Federal Savings and Loan Association (Commercial Federal) to honor them. Specifically, appellants urge that the assignments are invalid because they violate § 302 of the Labor Management Relations Act, 29 USC § 186 (1976). We agree with appellants and reverse the decree of the trial court.

This class action was commenced on September 12, 1979, by the plaintiffs-appellees, Arthur E. Jones, Bradley D. Miller, and Steve F. Sommers, for themselves and for all other persons similarly situated, requesting a declaratory judgment to determine whether the defendant herein, Commercial Federal, should honor certain assignments executed by the named plaintiffs in favor of the International Laborers' Union of North America, Local No. 1140, for the payment of union dues and assessments. Com-

mercial Federal filed a motion for interpleader requesting a court order directing the Holiday Trust Fund to appear and maintain or relinquish any claim it might have against the defendant with respect to the trust which was established by collective bargaining. In response to defendant's motion, the trial court ordered the trust fund to appear. Solem and Gilmore, employer trustees to the trust fund, responded to the order and requested that the petition be dismissed on the ground that, under the trust agreement, the money can only be used for the purpose of providing vacation benefits for laborer employees of Local 1140, and not for the payment of union dues or assessments.

The appellees thereafter filed a motion to bar the trust fund from asserting any claim and a motion to strike the answer and response of trustees Solem and Gilmore. On November 30, 1979, OBCEA filed a petition in intervention, requesting the court to allow it to intervene in the action for the reason that it was the multiemployer bargaining association which had negotiated the collective bargaining agreement with Local 1140, under which the Holiday Trust Fund had been established pursuant to § 302 of the Labor Management Relations Act, *supra*. An objection to Commercial Federal's motion for interpleader was next filed by the appellees on February 15, 1980.

On March 12, 1980, the trial court sustained the motion for interpleader and ordered that the employer trustees, Solem and Gilmore, and employee trustees, Donald Lewis and Leonard Schaefer, be made parties to this action. In addition, the court ordered that the motions of the appellees to strike the answer and response to the order of interpleader and to bar the Holiday Trust Fund from asserting any claim be denied. Having been made parties to this action, Local 1140, OBCEA, and the employee trustees all filed answers to the petition.

This matter was heard by the trial court on Oc-

tober 10, 1980. The evidence submitted was based on four stipulations entered into among the parties. On December 10, 1980, the court entered its decree ordering Commercial Federal to comply with the assignments. A motion for new trial was filed by OBCEA and the employer trustees. The motion was overruled, from which order OBCEA and the employer trustees appealed to this court. OBCEA is the only appellant who filed a brief in this court.

The issue before the court presents a preliminary question as to whether the doctrine of preemption applies to the type of dispute involved in this appeal. The preemption doctrine, generally, seeks to insure the accommodation of a uniform national labor policy. Additionally, in cases where the state is seeking to regulate activities impacting commerce under federal law, preemption is constitutionally based on the supremacy clause. U.S. Const. art. VI, cl. 2. See, also, *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 199-200, 98 S. Ct. 1745, 56 L. Ed. 2d 209 (1978). The U.S. Supreme Court has clearly stated that Congress, by enacting comprehensive legislation which governs labor relations affecting commerce and creating a centralized administrative body charged with administering that legislation, intended to exclude the various states from enforcing conflicting regulations or procedures. *San Diego Unions v. Garmon,* 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959). See, also, Gorman, Basic Text on Labor Law Unionization and Collective Bargaining at 766-86 (1976).

In *Garmon, supra* at 244, the Court established the broad rule of preemption applicable to this case: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to

regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."

The rule of federal preemption is not without its exceptions. Primarily, the judicially created exceptions are based on the Court's inability to discern a congressional intent to preempt local jurisdiction over the activity involved. "[T]he Labor Management Relations Act 'leaves much to the states, though Congress has refrained from telling us how much.'" *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 480, 75 S. Ct. 480, 99 L. Ed. 546 (1955). Most of the cases which have resulted in exceptions to the preemption doctrine have fallen within one of two areas left open in *Garmon.* "[D]ue regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See *International Assn. of Machinists v. Gonzales,* 356 U.S. 617. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon, supra* at 243-44. Violence and threats of violence have often been cited as the examples of such conduct.

Other exceptions to the rule have been specifically created by Congress. Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), suit may be brought in either state or federal court for breach of a collective bargaining agreement. "When . . . the activity in question also constitutes a breach of a collective-bargaining agreement, the Board's authority 'is not exclusive and does not destroy the

jurisdiction of the courts in suits under § 301.' *Smith v. Evening News Assn.*, 371 U.S., at 197 [83 S. Ct. 267, 9 L. Ed. 2d 246 (1962)]. . . . [A]ctions within the purview of § 301 . . . may be brought in either state or federal courts, *Dowd Box Co. v. Courtney, supra,* [368 U.S. 502, 82 S. Ct. 519, 7 L. Ed. 2d 483 (1962)] . . . ." *William E. Arnold Co. v. Carpenters,* 417 U.S. 12, 16, 94 S. Ct. 2069, 40 L. Ed. 2d 620 (1974).

We determine that the present case does not present an unfair labor practice. Rather, we conclude that this appeal is to enforce the terms of the collective bargaining agreement entered into among the parties, and arises within the purview of § 185. This being so, the law which we must apply in this case is federal labor law. In *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962), the Supreme Court determined that, in enacting § 301, Congress intended that federal law prevail over inconsistent state rules in order to achieve a uniform scheme of labor regulation.

Next, we address appellees' argument that the only appellant filing a brief in this court, OBCEA, has no standing in the case. Appellees appear to urge that under Neb. Ct. R. 16 (Rev. 1977), the judgment of the lower court should therefore be affirmed or these proceedings dismissed. We disagree. OBCEA, as a multiemployer bargaining association, is to negotiate collective bargaining agreements on behalf of its members with labor organizations representing employees of the member contractors.

Such contracts are standard, if not a dominant bargaining pattern, in the construction industry. The multiemployer contract reflects the desire of small employers to seek greater leverage with single unions representing the employees who work in the industry, and aids in effectuating uniform terms and conditions of employment within a given industry. See Gorman, Basic Text on Labor Law Unionization and Collective Bargaining at 86-89 (1976); [1976]

Lab. Rel. Exp. (BNA) § 125. Such bargaining units have been recognized by the U.S. Supreme Court. In *Labor Board v. Truck Drivers Union,* 353 U.S. 87, 95-96, 77 S. Ct. 643, 1 L. Ed. 2d 676 (1957), it stated: "The debates over the proposals demonstrate that Congress refused to interfere with such bargaining because there was cogent evidence that in many industries the multi-employer bargaining basis was a vital factor in the effectuation of the national policy of promoting labor peace through strengthened collective bargaining. The inaction of Congress with respect to multi-employer bargaining cannot be said to indicate an intention to leave the resolution of this problem to future legislation. Rather, the compelling conclusion is that Congress intended 'that the Board should continue its established administrative practice of certifying multi-employer units, and intended to leave to the Board's specialized judgment the inevitable questions concerning multi-employer bargaining bound to arise in the future.' "

The record in the present case indicates that OBCEA was designated the agent of the various employer members to negotiate and enter into the present collective bargaining agreement with Local 1140 on behalf of itself and the member employers. OBCEA signed the Agreement and Declaration of Trust in question and the underlying collective bargaining agreement as the "employer." Under § 2(2) of the National Labor Relations Act, 29 U.S.C. § 152 (1976), the term "employer" is defined to include any *person* acting as agent of an employer, directly or indirectly. Furthermore, under § 2(1) of the act, "person" is defined to include such "associations" as present in the instant case. Multiemployer bargaining associations, acting on behalf of individual employers for collective bargaining purposes, have been held to be within the definition of "employer" for collective bargaining purposes. Gorman, *supra* at 87. We determine that since multiemployer as-

sociations fall within the definition of employer under § 185(a), OBCEA is a proper party to this action and has standing to file a brief as an appellant in this appeal.

The agreement in question provides in part that "[e]ffective June 1, 1971, and thereafter, the Employer agrees to pay the sum of ten cents (10¢) per hour for each hour worked" into an employee holiday benefit fund.

In response to this contractual requirement in the collective bargaining agreement, negotiations commenced between OBCEA and Local 1140 resulting in an Agreement and Declaration of Trust, which created a trust fund to be known as the Omaha-Council Bluffs Laborers' Union Local 1140 Holiday Trust Fund. The Holiday Trust Fund was established pursuant to the requirements of § 302 of the Labor Management Relations Act. See § 186. In accordance with § 186(c)(5)(B), the trust fund was established with a board of trustees consisting of two employees, Local 1140 members Schaefer and Lewis, and two employer representatives, Solem and Gilmore, in the administration of the fund.

The trust agreement provides in pertinent part: "Section 2. GENERAL PURPOSE: The fund shall be a Trust Fund and shall be used only for the purpose of providing vacation benefits to employees pursuant to the terms of the aforementioned collective bargaining agreements." Article V, entitled Contributions to the Fund, provides at § 4: "HOLIDAY BENEFIT FUND: The sum contributed by the Employer for each Employee shall be credited to the account of each respective Employee for the payment of vacation pay during the period set out in the collective bargaining agreements between the Associations and the Union. The collective bargaining agreements presently in force provide that the employees holiday pay can only be withdrawn between December 1st and April 1st."

In June of 1979, employee trustee Schaefer approached OBCEA to determine if the association would agree to the use of the Holiday Trust Fund as a checkoff for the payment of union dues and assessments. The request was rejected by OBCEA on July 9, 1979. Thereafter, the employee trustees requested a vote by the board of trustees to authorize such use of the trust funds. On July 11, 1979, the trustees met to consider changing the trust agreement; however, the vote was deadlocked with two in favor of the change and two opposed. This class action suit commenced shortly thereafter.

Employee benefit funds, established through collective bargaining and administered jointly by union and employer representatives, have become a widely used financing medium for fringe benefits, such as pensions and health and welfare benefits. Section 302 of the Labor Management Relations Act requires that such funds be held as trusts conforming to a prescribed structure. Goetz, *Employee Benefit Trusts Under Section 302 of the Labor Management Relations Act,* 59 Nw. U. L. Rev. 719 (1965). Section 302 was enacted in 1947 as part of the Taft-Hartley amendments to the National Labor Relations Act. Generally, § 302 is a criminal statute which, subject to certain specific statutory exceptions, prohibits payments by an employer to a representative of his employees and the acceptance of such payments. See § 186(a) and (b). See, also, 48 Am. Jur. 2d *Labor and Labor Relations* § 340 (1979). The exceptions to the prohibition of this section are for payments to employee benefit trusts established and operated in accordance with the requirements of § 186(c). The pertinent provisions of that section provide as follows:

"(c) Exceptions

"The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such repre-

sentative, *for the sole and exclusive benefit of the employees* of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and . . . (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative *for the purpose of pooled vacation, holiday,* severance *or similar benefits,* or defraying costs of apprenticeship or other training programs: *Provided,* That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds . . . ." (Emphasis supplied.)

One of the primary purposes for the enactment of § 186 was to prohibit the use of employee benefit

funds for purposes unrelated to their benefit. Prevention of their use for aggrandizement of union leaders was specifically mentioned. Congress not only specified that such funds must be held in trust, but included the requirement that the trust must be for the sole and exclusive benefit of employees. "The more restrictive aspect of this provision is the requirement that the trust fund be established for the sole and exclusive benefit of certain employees and their dependents. This provision has a twofold effect: (a) it imposes a restriction on the *class of persons* the trust may benefit, and (b) it imposes a restriction on the *nature of the uses* to which the funds may be put." Goetz, *supra* at 732.

The sole and exclusive uses to which employee trust funds may be put have received a literal interpretation by the U.S. Supreme Court. In *United Mine Workers, etc. v. Robinson,* 455 U.S. 562, 102 S. Ct. 1226, 71 L. Ed. 2d 419 (1982), the Court discussed the sole and exclusive benefit requirement of § 186(c)(5), which, we note, is incorporated by specific reference in § 186(c)(6). "Its plain meaning is simply that employer contributions to employee benefit trust funds *must accrue to the benefit of employees and their families and dependents, to the exclusion of all others.* Indeed, this has been this Court's consistent interpretation of § 302(c)(5).

"Just last Term, the Court reiterated that 'the "sole purpose" of § 302(c)(5) is to ensure that employee benefit trust funds "are legitimate trust funds, used actually for the specified benefits to the employees of the employers who contribute to them . . . ." ' *NLRB v. Amax Coal Co.,* ___ U.S. ___, ___ (quoting 93 Cong. Rec. 4678 (1947), reprinted in 2 Legislative History of the Labor Management Relations Act, 1947, 1305 (Leg. Hist. LMRA)). See *Arroyo v. United States,* 359 U.S. 419, 425-426. Accord, *Walsh. v. Schlecht,* 429 U.S. 401, 410-411; *Lewis v.*

*Benedict Coal Corp.,* 361 U.S. 459, 474 (Frankfurter, J., dissenting). This reading is amply supported by the legislative history. See, *e.g.,* 93 Cong. Rec. 4877 (1947), 2 Leg. Hist. LMRA, at 1312; *id.,* at 4882-4883, 2 Leg. Hist. LMRA, at 1321-1322. *The section was meant to protect employees from the risk that funds contributed by their employers for the benefit of the employees* and their families *might be diverted to other union purposes* or even to the private benefit of faithless union leaders. Proponents of this section were concerned that pension funds administered entirely by union leadership might serve as 'war chests' to support union programs or political factions, or might become vehicles through which 'racketeers' accepted bribes or extorted money from employers.

"Our interpretation of the purpose of the 'sole and exclusive benefit' requirement is reinforced by the other requirements of § 302(c)(5). Section 302(c)(5) is an exception in a criminal statute that broadly prohibits employers from making *direct or indirect payments to unions or union officials.* Each of the specific conditions that must be satisfied to exempt employer contributions to pension funds from the criminal sanction is consistent with the nondiversion purpose." (Emphasis supplied.) 102 S. Ct. at 1231-32.

The above-quoted language of the U.S. Supreme Court clearly indicates that the payment of trust fund money by Commercial Federal directly to Local 1140 under the proposed employee assignments is neither contemplated by § 186 nor permissible under the statute's sole and exclusive benefit requirement. The intended use to which the appellees would apply the trust funds is a purpose clearly outside the statutory exception. The separate holiday trust benefit requirement would be violated if the funds held therein were paid to anyone other than the employees for whose benefit the trust fund was created.

It is well established that state courts must follow the federal law, as fashioned by the federal courts, to effectuate the statutory policy of enforcement of collective bargaining agreements. *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962); *Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S. Ct. 519, 7 L. Ed. 2d 483 (1962); *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957); *Trust Fund Servs. v. Heyman,* 88 Wash. 2d 698, 565 P.2d 805 (1977). Consistent with this policy, we determine that the order of the District Court authorizing the assignment of funds from the Holiday Trust Fund administered by Commercial Federal must be reversed and the petition of the appellees dismissed.

REVERSED AND DISMISSED.