John L. LEWIS, Josephine Roche, and Henry G. Schmidt, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs-Appellees,

v.

MILL RIDGE COALS, INC., Harlan Everglow Coals, Inc., Yocum Creek Coal Company, Inc., Imperial Harlan Coals, Inc., and Premium Coals, Inc., Defendants-Appellants.

Nos. 14455–14459.

United States Court of Appeals Sixth Circuit.

Jan. 31, 1962.

Harold H. Bacon, Washington, D. C., Val J. Mitch, Washington, D. C., Lay & Knuckles, Grant F. Knuckles, Pineville, Ky., M. E. Boiarsky, Charleston, W. Va., on brief, for plaintiffs-appellees.

James S. Greene, Jr., Harlan, Ky., James Sampson, Harlan, Ky., on brief, for defendant-appellant.

Before MILLER, Chief Judge, and WEICK and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This is an appeal from a summary judgment in favor of plaintiffs-appellees, John L. Lewis, Henry G. Schmidt and Josephine Roche, Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, against defendants-appellants, Mill Ridge Coals, Inc., Harlan Everglow Coals, Inc., Yocum Creek Coal Company, Inc., Imperial Harlan Coals, Inc., and Premium Coals, Inc., coal mine operators, in varying amounts totalling $436,794.97 for royalties claimed to be due plaintiffs, as such trustees, under contracts between defendants and the International Union, United Mine Workers of America. Counterclaims by defendants for royalties paid to plaintiff-trustees were disallowed by the summary judgment. Five actions were consolidated and disposed of in one judgment.

Defendants, referred to herein as the operators, were signatories to collective bargaining contracts with the United Mine Workers, referred to herein as Mine Workers. Among the terms of such contracts were the operators' agreements to pay to the United Mine Workers of America Welfare and Retirement Fund the sum of thirty (30) cents per ton (increased to forty [40] cents) on each ton of coal produced by such operators during the contract periods. These payments are referred to as royalties. The United Mine Workers of America Welfare and Retirement Fund of 1950, referred to herein as the Fund, was set up in 1950 to provide a variety of benefits to the members of the Mine Workers and their dependents. All of the operators' employees were members of the Mine Workers Union. The Fund was established under authority of, and subject to the requirements of, Section 302 (c) of the Labor-Management Relations Act of 1947 (Title 29 U.S.C.A. § 186[c]). Three trustees were appointed to administer the Fund, chosen, one, by the Mine Workers, one by the operators, and a third, a neutral party, chosen by the other two. Josephine Roche was selected as the neutral trustee.

The complaints, as amended, charged that between January 16, 1956, and April 30, 1958, the operators' production of coal called for royalty payments totalling $436,794.97. This amount is not in question, if plaintiffs are entitled to recover. Defendants denied liability for such royalties and sought, by counterclaims, to recover royalties already paid to plaintiff-trustees. Their answers charged that each of their promises to pay royalties, "is unenforceable and void for want of consideration or a failure thereof." Their respective counterclaims charged that, as set up and administered, the Fund did not serve and actually frustrated the intent and objectives of the agreement between the operators and the Mine Workers Union. Paragraphs five, six and seven of the counterclaim in case No. 14,456 detail such charges.[1]

1. "5. That it paid said sum of $11,729.24 into said fund under the mistaken belief that out of said fund there was to be created a trust with the members of the United Mine Workers of America who were employees of the operators, including this defendant, and the dependents of such members as the beneficiaries, and that such beneficiaries would have vested, legally enforceable rights in such trust, all of which was a 'fringe benefit' for the union member employees of the operators, including this defendant, and the dependants of such members, and was for the purpose of improving employer-employee relations between said union members and the operators, including this defendant and its union employees.

"6. Defendant avers on information and belief that such a trust has not been created, but that the plaintiffs and their predecessors in office have created with such fund a charitable trust without any vested, legally enforceable rights in the members of the United Mine Workers of America employed by the operators, including this defendant, or in the dependents of such members, and that such trust has been so created as to make the International Union of the United Mine Work-

Following such defense pleadings, plaintiffs filed motions for partial summary judgments, and to strike the defenses raised by defendants' answers and counterclaims. Such motions were supported by the affidavit of Josephine Roche, the neutral trustee of the Fund. Her affidavit denied the charges of misconduct which paragraph six of defendants' counterclaims detailed, and affirmatively averred the good conduct of the trustees and the freedom of the administration of the trust from the charged baleful control by the United Mine Workers Union and its agents.[2]

In response to the Roche affidavit and plaintiffs' said motions, defendants filed an affidavit of the president of one of the operator defendants. This affidavit supported a request by defendants under Rule 56(f), Federal Rules of Civil Procedure, 28 U.S.C.A., that the court con-

ers of America the real beneficiary by placing the immense funds accumulated at its disposal, and which funds, by adopted rules and regulations, cannot be reached directly or indirectly by the individual union member or his dependents except through the arbitrary discretionary approval of various international and district and local union officials, and that through such failure to create a trust with vested, legally enforceable rights in the union members and in the dependents of union members, and by the use of this fund as practiced, the union member employees of the operators, including this defendant, and the dependents of such union member employees, have been denied the promised 'fringe benefit' and the employer-employee relations between the union members and the operators, including this defendant and its union employees, have been adversely affected, and the International Union, United Mine Workers of America, has been placed in a position of coercive power over both the operators and the individual union members, including this defendant and its union member employees.

"7. That the defendant has paid said sum of $11,729.24 to the plaintiffs and their predecessors in office under the erroneous belief that its promise to pay said 40 cents per ton royalty was binding upon it, whereas said promise was unenforceable and void for want of consideration or a failure thereof, and that the defendant did not obtain the benefit expected in return for such promise and, therefore, it is entitled to restitution by the plaintiffs of said sum."

2. "8. That at no time have the Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 ever authorized that any of the moneys or other assets of said trust fund be placed at the disposal of the United Mine Workers of America or any officer, official, employee or any other person connected with the United Mine Workers of Ameri-

ca, and no moneys or assets of said Fund have in fact, whether authorized or not by the Trustees of said Fund, been placed at the disposal of the United Mine Workers of America or any officer, official, employee or any other person connected with the United Mine Workers of America.

"9. That the trustees of the United Mine Workers of America Welfare and Retirement Fund have never designated or authorized any person or organization, specifically, no officer, official or employee of the United Mine Workers of America, to approve or deny applications for benefits from the United Mine Workers of America Welfare and Retirement Fund of 1950; that approval or disapproval of all applications to the United Mine Workers of America Welfare and Retirement Fund of 1950 is given solely by the Trustees of said Fund in the offices of the Fund in Washington, D. C.

"10. That an applicant may submit an application directly to the office of the United Mine Workers of America Welfare and Retirement Fund of 1950 at 907 Fifteenth Street, N. W., in Washington, D. C. and is not required to file such application through any of the offices of the United Mine Workers of America or to any officer, official or employee of the United Mine Workers of America.

"11. That deponent is aware of the services rendered by the United Mine Workers of America to its members in assisting them in filling out applications, assembling applications and advancing supporting material to be filed with an application submitted to the Fund for purpose of obtaining benefits from said Fund. However, neither the United Mine Workers of America nor any officer, official or employee thereof approves or disapproves the application for benefits, nor in any way influences the decision of the Trustees as to whether the benefits applied for by the application shall be approved or disapproved."

tinue the hearing on plaintiffs' motions for summary judgment until defendants could, through discovery depositions of the trustees of the Fund, obtain evidence of facts to support their charges of mismanagement and failure of the Fund to provide defendants with the consideration which, they say, the contract with the Union contemplated should be received by them in exchange for the royalty payments into the Fund.[3]

It should be noted that only in the above quoted paragraphs of defendants' counterclaims and in the Green affidavit did defendants attempt to plead facts constituting the defense of failure of consideration. Their answer to the complaint, as distinguished from their counterclaims seeking recovery of royalties already paid, merely stated as a legal conclusion that the contract with the Mine Workers Union, insofar as the royalty payments were involved, "is unenforceable and void for want of consideration or a failure thereof."

Following several further procedural maneuvers by each side, the district court, on February 27, 1959, entered an order providing, so far as material to this appeal,

"2. Plaintiffs' motion for partial summary judgment should be, and is, granted with respect to paragraph No. 6 of the counterclaim of the defendant in each of the above entitled actions.

"3. Plaintiffs' motion for partial summary judgment in each of these cases should be, and is, in all other respects denied.

"4. Plaintiffs' alternative motion to strike the defenses raised by the answer and the allegations of the counterclaim of the defendant in each of the above entitled actions should be, and is, denied."

Thus the litigation remained, presumably awaiting trial, until on February 23, 1960, the United States Supreme Court announced its decision in the case of Lewis, et al., Trustees v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed. 2d 442. Relying on the holding of such decision, plaintiffs on March 16, 1960, made a new motion for summary judgment. On October 20, 1960, the district judge filed an opinion directing summary

3. The President of defendant Harlan Everglow Coals, Inc., deposed and said:

"That said corporation cannot present by affidavit facts essential to justify its opposition to plaintiffs' motion to strike and/or motion for summary judgment at this time because it has not had an opportunity to take advantage of the discovery procedures, provided for by the Federal Rules of Practice, as the plaintiffs' reply to its answer and counterclaim was not filed until August 17, 1958, and as said motion of plaintiffs was not filed until August 12, 1958.

"That it is necessary to take depositions in discovery in order to obtain information exclusively within the knowledge and access of plaintiffs and their agents and employees in order to verify facts which this affiant believes exist in support of the answer and counterclaim of the defendant.

"That if allowed sufficient time to take depositions in discovery, affiant believes that facts can be developed establishing that the resolutions, regulations and procedures adopted by the plaintiffs are contrary to the express purposes of the Welfare and Retirement Fund attempted to be created by the National Bituminous Coal Wage Agreement of 1950; that the plaintiffs, their agents and employees, have directly or indirectly, prevented persons described as beneficiaries to the fund under the provisions of the 1950 Wage Agreement from receiving benefits provided for therein as the result of the refusal of officers in the International, Districts and Locals of the United Mine Workers of America, to certify to their eligibility; that the plaintiffs, their agents and employees, have advised such persons that the benefits created under the fund are a gratuity in which such persons have no vested interest; and that the plaintiffs, their agents and employees, have placed the immense funds collected from the mine operators in banks owned by the United Mine Workers of America, and have used such funds in a manner so as to increase the power and labor control of the United Mine Workers of America, all to the detriment of the operators and contrary to the provisions, intent and purpose of the 1950 Wage Agreement."

judgment for plaintiffs for the relief sought and dismissed the counterclaims of defendants. The district court was of the opinion that the Benedict case was decisive of the issue of want or failure of consideration, and disposed of that issue, saying:

"In Lewis v. Benedict Coal Corporation, supra, the Supreme Court said: 'The royalty payments are really another form of compensation to the employees, and as such the obligation to pay royalty might be thought to be incorporated into the individual employment contracts.'

"In view of the decision in the Lewis v. Benedict Coal Corporation case, supra, and the undisputed fact that the defendants produced the coal for use or for sale on which royalties are sought to be collected the defense of want of consideration or a failure thereof would appear to be insufficient as a matter of law."

He likewise disposed of defendants' counterclaims as follows:

"* * * the court in ruling on the prior motion for partial summary judgment, granted summary judgment with respect to paragraph 6 of these counterclaims. This leaves as the only issue that created by the allegations of paragraph No. 7 of the counterclaims to the effect that the agreement to pay royalty on coal produced for use or sale is unenforceable and void for want of consideration or a failure thereof, and, therefore, defendants are entitled to recover the royalty payments which they have made. In view of the conclusion hereinabove stated that there was consideration for the agreement, recovery on this ground cannot be permitted."

We agree with the district judge that Benedict, which reversed this court's decision in Lewis v. Benedict Coal Corporation, 259 F.2d 346, supports the position that the claimed failure of consideration resulting from the charged misconduct of the trustees is not available as a defense in bar to the operators' obligation to pay royalties, and will not support the operators' counterclaims. In this court's decision in Benedict, we held that breach of a collective bargaining agreement of the type here involved, by the Mine Workers Union, was available to a signatory operator as a defense to an action for the same type of royalty payments. We likewise held that damages suffered by a coal operator because of the Union's breach of contract could be offset against royalties payable by the operator. The Supreme Court reversed our holding in this regard.

The operators' position here is that while the Fund is a trust, the rights and remedies available to those interested in the trust are controlled by the law of contracts, Restatement of the Law (2nd) Trusts, § 26.30. They argue that the consideration for their promise to pay royalties was the expected improved employer-employee relations that would flow from the benefits provided for the employees. They charge that the trustees used the vast trust funds in their hands to increase the power of the United Mine Workers Union and its leaders and put the operators and the intended beneficiaries of the fund in a position of subserviency to such union officials. They charge that thus they have been denied receipt of the agreed exchange that was to come to them for their performance of the bargain. They assert that even though their promise to pay royalties was made to the Mine Workers as promisee, and the claimed misconduct of the plaintiff-trustees is not chargeable to the mine workers, the consideration of the contract has failed, nevertheless; that they are excused from performance even though the failure of consideration was not the fault of the promisee mine workers, but the fault of the trustees. "Failure of consideration is a general expression covering every case where an exchange of values is to be made and the exchange does not take place, either because of the fault of a party *or without his fault.*" Restatement of the Law of Contracts, § 274, Comment a.

However interesting an academic discussion of the applicability of classical and precedential precepts of the law of contracts to the contractual obligations here involved might be, Benedict has foreclosed the propriety of such discussion. The Supreme Court has now placed collective bargaining contracts in a special class, exempt from some of the rules of construction traditionally applicable to contracts. In Benedict, the Court said (361 U.S. 470, 471, 80 S.Ct. 489):

> "Section 301 authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448 [77 S.Ct. 912, [923], 1 L.Ed.2d 972]. In the discharge of this function, having appropriate regard for the several considerations we have discussed, including the national labor policy, we hold that the parties to a collective bargaining agreement must express their meaning in unequivocal words before they can be said to have agreed that the Union's breaches of its promises should give rise to a defense against the duty assumed by an employer to contribute to a welfare fund meeting the requirements of § 302(c) (5)."

See also, United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

In Benedict, the Supreme Court held that damages occasioned by a breach of contract by the Union, of a collective bargaining agreement, could not be used as a setoff against a suit brought by the trustees to recover royalty payments.

Justice Brennan substantially equated the defense in Benedict to that asserted by the operators here when he said, "Benedict's main defense was that the performance of the duty to pay royalty to the trustees, regarding them as third party beneficiaries of the collective bargaining agreement, was excused when the promisee contracting party, the union and its District 28 * * * violated the agreement by strikes and stoppages of work." (p. 462, 80 S.Ct. p. 491.)

We do not think that the fact that the breach charged in Benedict was that of the promisee union, whereas here it is that of the trustees, creates such a difference as to make Benedict inapplicable to our case. A fair reading of Benedict discloses the Court's purpose to give the ultimate beneficiaries of the welfare Fund (the men who mined the coal, and their dependents) a status that would insulate them from the consequences of a breach of the contract by either the Mine Workers Union, as promisee, or the trustees of the Fund, as fiduciaries charged with administration of the fund.

> "The royalty payments are really another form of compensation to the employees and as such the obligation to pay royalty might be thought to be incorporated into the individual employment contracts. This is not to say that the same treatment should necessarily be accorded to royalty payments as is accorded to wages, but the similarity militates against the inference that the parties intended that the trustees' claim be subject to offset." (361 U.S. 469, 470, 80 S.Ct. 495.)

Referring to the provisions of the bargaining agreement, the court further said, "Their clear import is that the parties meant that the duty to pay royalty should arise on the production of coal independent of the union's performance." (361 U.S. 466, 80 S.Ct. 493).

Since the decision in Benedict forbids the operators withholding of royalty payments because of the union's breach, we assume that a like prohibition would be enforced against refusal to pay because of misconduct by the trustees. We affirm the judgment of the district court's holding that the charged failure of consid-

eration was not available as a defense to the suit for royalties or as support for the operators' counterclaims.

■ Our affirmance, however, should not be construed as a holding that the operators are without remedy to call the trustees to account for failure to observe and conform their conduct to the fiduciary responsibilities cast upon them by the law and the terms of the welfare fund. The trust here involved was created pursuant and subject to the limitations of § 302 of the Labor Management Relations Act of 1947 (Title 29 U.S.C.A. § 186). Subsection (e) thereof gives the United States District Courts jurisdiction to restrain violations of § 302.

"Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetuate control of union officers, for political purposes, or even for personal gain. See 92 Cong.Rec. 4892–4894, 4899, 5181, 5345–5346; S.Rep. No. 105, 80th Cong. 1st Sess., at 52; 93 Cong. Rec. 4678, 4746–4747. To remove these dangers, specific standards were established to assure that welfare funds would be established only for purposes which Congress considered proper and expended only for the purposes for which they were established. See Cox, Some Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 274, 290. Continuing compliance with these standards in the administration of welfare funds was made explicitly enforceable in federal district courts by civil proceedings under § 302(e)." Arroyo v. United States, 359 U.S. 419, 426, 427, 79 S.Ct. 864, 868, 3 L.Ed.2d 915.

The jurisdiction conferred by § 302(e) will permit employment by the district courts of whatever equitable remedies may be needed to command obedience, by the trustees, to their contractual and statutory obligations.

The operators have an enforceable right to proper conduct by the trustees. "In a very real sense Benedict's (an operator) interest in the soundness of the fund and its management is in no way less than that of the promisee union." (361 U.S. 468, 469, 80 S.Ct. 495.) A part of the inducement for the operators' promises to make payments to the Welfare Fund was their just expectation that the security thus provided for their employees would promote a better employer-employee relationship. If violation of fiduciary duties by the chosen trustees deprives the operators of this desirable, and contracted for, benefit, equity can provide the operators with a remedy.

Prior to the decision in Benedict, the district court had granted a partial summary judgment as to some of the operators' claims of misconduct by the trustees. The defendants sought leave of the court to obtain, by discovery, factual data which would controvert an affidavit by one of the trustees denying some of the misconduct charged. Such discovery was denied them. They had no opportunity to appeal from the granting of the partial summary judgment and the final appealable order granting summary judgment was based upon the court's conclusion, which we affirm, that none of the facts pleaded could constitute a defense. No fact question was resolved by the trial judge in his final order. Under these circumstances, we are of the opinion that all of the facts relied upon by operators to support its claim of want of or failure of consideration may be relied upon in any appropriate action that may hereafter be taken. Nothing concluded in this case should be considered as an adjudication of the existence or nonexistence of such well pleaded facts. Cf., Hartmann v. Time, Inc., 166 F.2d 127, 1 A.L.R.2d 370 (C.A. 3, 1947).

The final judgment of the district court is affirmed.