TRUST FUND SERVICES, *Respondent*, v. TROJAN HORSE, INC., *Appellant.*

*John P. Cogan*, for appellant.

*Donaldson & Kiel, P.S.*, and *Robert A. Bohrer*, for respondent.

FARRIS, J.—Trust Fund Services is the assignee of the claims of a welfare trust fund which was established on March 10, 1952, by the Seattle Local Joint Executive Board in its capacity as representative of various Seattle culinary unions. The fund is currently self-insured. Under article 6(a)(2) of the trust agreement establishing the fund, the board of trustees is empowered to promulgate rules and regulations to carry out the purposes of the trust. Exhibit No. 4. Prior to this action that authority was exercised and the following pertinent eligibility standards were established:

>   (6)   Termination of Benefits
>       (a) If the employer does not submit the required remittance and report to the Welfare Fund in

accordance with the collective bargaining agreement such employee or employees for whom he has not made the required remittance and reports prior to the delinquent date shall be ineligible for any benefits of the Welfare Plan for any disability which may occur during the month succeeding the month in which the payments accrued; and his eligible status shall be considered terminated as of midnight on the last day of the month during which payments accrued.

(b) If an employer is delinquent in making required remittance for payments and reports, his employees shall not be eligible for Death Benefits and Hospitalization or Medical Care which may occur during the delinquent period.

Employees Benefit Plan-B, Art. 3(6)(a), (b) (exhibit No. 3).

Several claims were filed against the fund by two employees of Trojan Horse, Inc.: Dwight Hagen in the total amount of $6,678.89 and Carl Wabinga in the total amount of $539. Because Trojan Horse, Inc., had been delinquent in making its required payments to the fund during each of the months in which the two employees incurred the claimed expenses, the welfare fund denied their claims pursuant to the preceding eligibility rules but agreed to pay their expenses in return for an assignment of their rights against Trojan Horse, Inc. The assignments were obtained and Trust Fund Services brought this action against Trojan Horse, Inc., to recover: (1) the medical expenses paid on behalf of the employees, (2) the delinquent employee benefit contributions, (3) liquidated damages, (4) costs, and (5) attorney's fees.

The action was based upon identical health and welfare provisions of two collective bargaining agreements:

10:06 Delinquencies—Liquidated Damages: Insofar as payments by the Employers to the Welfare Fund are concerned, time is of the essence. The parties recognize and acknowledge that the regular and prompt payment of contributions due to the Welfare Fund is essential to

the stability of the Fund and to the prompt payment of benefits and that it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund which will result from the failure of the Employer to make payments in full within the time provided. Therefore, it is agreed that if an Employer fails to pay within 15 days of the due date, the required contributions, such Employer shall be obligated for liquidated damages in the amount of ten dollars ($10.00) for each such failure to pay in full within the time provided, or ten percent (10%) of the amount due and unpaid, whichever is greater, in addition to the full amount of the delinquency owing.

10:07 Reasonable Costs and Attorney's Fee: It is also agreed that in the event the Joint Board, or the Unions, or the Board of Trustees, retain legal counsel for the purpose of enforcing the payment of delinquent contributions and liquidated damages owing to the Welfare Fund, the delinquent Employer shall be obligated for all reasonable expenses incurred in connection with the collection effort, including reasonable attorney's fees, accountants' fees, costs of attachment bonds, court costs, etc.

10:08 Employer Remains Liable for Loss of Benefits: Notwithstanding the foregoing provisions, if any Employee should be disentitled to any benefits under the Welfare plan, by reason of an Employer's delinquency in the payment of contributions, such Employer shall be liable to such Employee in a civil action, for the full amount of the benefit which the Employee lost, together with reasonable attorney's fees and costs. Acceptance or collection of delinquent contributions by the Board of Trustees shall not absolve the Employer of this liability.

Working Agreement & Wage Scale, Art. 10, §§ 10:06, 10:07, 10:08 (effective June 1, 1972) (exhibit No. 2), *same as* Working Agreement & Wage Scale, Art. 10, §§ 10:06, 10:07, 10:08 (effective from June 1, 1969, through May 31, 1972) (exhibit No. 1).

A partial summary judgment was entered against Trojan Horse, Inc. (without opposition) for the delinquent employee benefit contributions, liquidated damages, costs, and attorney's fees. The question of Trojan Horse, Inc.'s liability for the amounts paid by the welfare fund for the em-

ployees' medical expenses was thereafter tried to the court without a jury and judgment was entered against Trojan Horse, Inc., for $7,217.89 plus $1,000 in attorney's fees. Trojan Horse, Inc., appeals.

Trojan Horse, Inc., argues that the health and welfare provisions constitute a contract of insurance which must be construed in accordance with the general principles of commercial insurance law since there is (1) an insurer, (2) a consideration, (3) a person insured or his beneficiary, and (4) a hazard or peril insured against. It cites statutory and case authority in support of this contention. Trojan Horse, Inc., also relies upon the fact that RCW 48.52 places the welfare fund under the supervision of the State Insurance Commissioner. It concludes that, as insurance, the health and welfare provisions must comply with the general rule that premiums cannot be collected for any period during which coverage did not exist. *See* 44 C.J.S. *Insurance* § 353 (1945). Trojan Horse, Inc., contends Trust Fund Services' interpretation of those provisions, which was accepted by the trial court, violates that rule since in the event of a delinquency in payments, the employer remains liable for the delinquent payments plus a penalty under section 10:06, while under section 10:08 an employee who is declared ineligible for benefits because of the delinquency is given the right to sue his employer for the benefits lost. Further, Trojan Horse, Inc., argues that the exclusionary language of section 10:08 is ambiguous and must, therefore, be interpreted to mean that denial of coverage can occur and employer liability arise only where there is *total* non-payment of the required contributions, rather than where the contributions are merely late.

■ The threshold question is whether the health and welfare provisions of the collective bargaining agreements constitute insurance. Federal law requires that collective bargaining agreements be enforced in accordance with the general body of federal labor law. *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962). Trojan Horse, Inc., has cited no case in which the

health and welfare provisions of a collective bargaining agreement have been held to be a contract of insurance. Further, there are several crucial distinctions between the plan involved here and a typical insurance contract. First, while an insurance company is liable under a policy of insurance up to the limits of that policy, the welfare fund here is liable only to the extent of its available funds. Trust Agreement, Art. 5(c) (exhibit No. 4). Second, the benefits provided by the fund are not available to the general public. Rather, they are available only through the current collective bargaining agreement and are subject to negotiations between labor and management. The trial court therefore properly concluded that the health and welfare provisions of the collective bargaining agreements do not constitute insurance.

Trojan Horse, Inc., argues further that even if the health and welfare provisions are not insurance, the result reached by the trial court cannot be sustained because to do so would constitute enforcement of a contract which is not supported by consideration. It is argued that no consideration exists because in the event of a delinquency the employer remains liable for his contributions plus a penalty under section 10:06 but loses the benefit of the coverage afforded to his employees and under section 10:08 becomes subject to suit by them in the event they are deprived of benefits. It submits that it is being required to pay something for nothing. We disagree. The health and welfare provisions are part of the complete collective bargaining agreements between the parties. Collective bargaining agreements generally are not invalid on the ground that they are not supported by consideration. *See* 48 Am. Jur. 2d *Labor and Labor Relations* § 1206, at 758 (1970); 56 C.J.S. *Master and Servant* § 28(37), at 189 (1948). Here, the complete collective bargaining agreements are adequately supported by consideration. Further, the employees performed the work required of them which gave rise to the employer's obligation to make contributions to the fund. Lack of consideration is therefore not a valid defense.

*See Lewis v. Mill Ridge Coals, Inc.,* 298 F.2d 552, 556 (6th Cir. 1962).

Trojan Horse, Inc., also assigns error to the trial court's conclusion that the "case is controlled by Federal Labor Law under Section 301(a) and 302(c)(5)(B)." Conclusion of law No. 2. (The complete citation is: Labor Management Relations Act §§ 301(a), 302(c)(5)(B), 29 U.S.C. §§ 185(a), 186(c)(5)(B) (1970).) Trojan Horse, Inc., objects specifically to the use of the word "controlled" on the ground that the reference may influence this court into holding that "some obscure labor relations law" should determine this case. Examination of the statutes referred to by the trial court convinces us that neither of them is determinative of the result here.

■ Finally, both Trust Fund Services and Trojan Horse, Inc., request attorney's fees; Trust Fund Services for fees on appeal and Trojan Horse, Inc., for the entire litigation. Trust Fund Services' request for fees is based upon section 10:08 of the collective bargaining agreements. It follows from the provisions for attorney's fees that a reasonable fee must be allowed for services on appeal. *See Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 64, 442 P.2d 950 (1968); *F.S. Jones Constr. Co. v. Duncan Crane & Rigging, Inc.,* 2 Wn. App. 509, 513, 468 P.2d 699 (1970). We therefore remand the cause to the trial court for the determination of a reasonable award to Trust Fund Services for attorney's fees on appeal.

The claim for attorney's fees advanced by Trojan Horse, Inc., is based upon the equitable ground that this suit has aided in the construction of the trust agreement and improved the administration of the trust. We reject the argument.

Affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied June 24, 1976.

Review denied by Supreme Court October 19, 1976.