[No. 4660–1.   Division One.   April 17, 1978.]

TRUST FUND SERVICES, *Respondent,* v. GLASSCAR, INC., *Appellant.*

*Quigley, Hatch, Loveridge & Leslie, James F. Loveridge, Jr.,* and *Paul V. Rieke,* for appellant.

*Donaldson & Kiel, P.S.,* and *David P. Wolds,* for respondent.

CALLOW, J.—The defendant, Glasscar, Inc., appeals from an order granting a partial summary judgment to the plaintiff, Trust Fund Services, and from the denial of its motions for reconsideration and to amend its answer.

Trust Fund Services is the assignee of the Glassworkers Industry Health & Welfare Trust Fund and the Western Glaziers Retirement Trust Fund, which are third party beneficiaries to a collective bargaining agreement between Glasscar, Inc. (hereinafter referred to as the employer), and the Glaziers & Glassworkers Union Local No. 188 (hereinafter referred to as the union), a labor union representing employees employed in an industry affecting interstate commerce. The Trust Funds are joint labor–management trusts created pursuant to section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).

Trust Fund Services commenced this action against the employer in December 1974 for breach of the collective

bargaining agreement entered into by the employer and the union, praying for judgment for such amounts as might be determined by an examination of the employer's books and records to be due and owing to Trust Fund Services, plus liquidated damages of 10 percent of delinquent contributions, plus interest on delinquent contributions and costs and attorney's fees.

The employer's first answer generally denied the complaint. Thereafter, the employer filed an amended answer asserting by way of affirmative defense:

> Prior to November 23, 1971, Defendant's President Norman Huletz was approached by an agent from Glaziers and Glassworkers Union Local #188 to entice the said Defendant into having a union shop. The union agent prior to that date informed Mr. Huletz that if he would sign a collective bargaining agreement then in effect, he would only be required to hire one union employee. Thereafter, Mr. Huletz, as President of the company, hired one union person to work for Glasscar, Inc. During the period of time that the union laborer was working for Glasscar, Inc., the Defendant corporation reported to Trust Fund Services and paid the required pension benefits for the one union person, but did not at any time pay any benefits for the benefit of non–union personnel then working for Glasscar, Inc.

> At no time did the Trust Fund Services advise Defendant Glasscar that they were required to make trust fund payments for the benefit of non–union personnel who would not participate in the benefits if they were paid. The allegations made in the Plaintiff's Complaint and subsequent audit are charges being made by Trust Fund Services against non–union personnel; that in fact, Glasscar, Inc. has not had union personnel working for it for several years.

On April 18, 1975, Trust Fund Services filed a motion for summary judgment as to liability. In support of its motion for summary judgment as to liability, three issues were discussed: (1) whether federal labor law applies; (2) whether contributions are due to Trust Fund Services on all employees, regardless of union membership; and (3) whether the union or an agent thereof may, by a prior or

contemporaneous oral statement, vary the terms of a written agreement.

On October 16, 1975, Trust Fund Services filed a second motion for summary judgment, together with supporting affidavits and copies of the decision and award of an arbitrator in an arbitration between the Northwest Glass Management Association, as employer, and the Glaziers & Glassworkers Local Union No. 188.

The affidavit of an accountant for the plaintiff contained a report of his audit of Glasscar, Inc.'s payroll books and records, which showed $12,095 due in employee benefit contributions covering the period January 1972 through December 1974, plus liquidated damages of $1,209.51 and interest of $1,252.79. The office manager of Trust Fund Services revised the audit to conform with revisions demanded by the employer in its answer to interrogatories. This affidavit shows unpaid employee benefit contributions due in the amount of $12,040.47, liquidated damages of $1,204.05, and interest at 8 percent per annum in the sum of $1,242.53.

Trust Fund Services alleged that the following facts had been established by the employer's answers to interrogatories: (a) Norman E. Huletz was the registered agent and president of Glasscar, Inc., on November 23, 1971; (b) on November 23, 1971, Norman E. Huletz executed a collective bargaining agreement with the Glassworkers Union on behalf of Glasscar, Inc.; (c) minor errors were made on the audit.

On October 23, 1975, the employer filed the affidavit of its president resisting the motion for summary judgment. The affidavit stated that only one union employee had been hired to work for Glasscar, Inc., and during the period of time the union employee worked the employer reported to Trust Fund Services and paid the required pension benefits for the union employee, but not for any nonunion employees; that no union personnel have worked for Glasscar, Inc., since February 28, 1974; that Glasscar made the necessary reports on the forms prepared by Trust Fund Services until

it no longer had a union employee; that the form did not make provision for union and nonunion workers, but appeared to be for union personnel only; that at no time had Trust Fund Services made a claim for contributions to nonunion personnel until suit was brought. Relative to the arbitration between the Northwest Glass Management Association and Glaziers & Glassworkers Local Union No. 188, the affidavit states that Glasscar, Inc., is not and has never been a member of the Northwest Glass Management Association, was not a party to this arbitration, and any determination made by the arbitrator is not binding upon Glasscar. The affidavit further states that the contract which the defendant Glasscar signed does not require an employer to make fringe benefit contributions for nonunion employees, and that nonunion employees can never realize any of the investment flowing from the contributions made for their benefits unless they join the union. The affidavit said that the defendant believes that there is no person in Trust Fund Services who has the authority to make the determination that the defendant is liable for contributions for nonunion personnel, that Trust Fund Services has no authority to initiate this action, and that any agreement theretofore signed terminated automatically on July 1, 1974, when Glasscar no longer employed union personnel.

The order granting partial summary judgment was signed March 29, 1976, awarding Trust Fund Services $8,022.18 representing unpaid employee benefit contributions covering the period January 1972 through December 1974, $802.22 in liquidated damages, $926.12 interest on unpaid contributions, $440.50 for costs and expenses, and $350 attorney's fees, for a total judgment of $10,541.02. The defendant appeals from the order granting the plaintiff a partial summary judgment and from the denial of its motions for reconsideration and to amend its answer.

The issues raised on appeal are:

1. Was summary judgment granted erroneously in the face of unresolved material issues of fact?

2. Did the trial court ignore relevant evidence in granting the motion for summary judgment?

3. Was it error under CR 15 to deny the defendant's motion to amend its answer?

The November 23, 1971, agreement signed by the defendant read in part:

*Article 25. Trust Funds*

. . .

*Section 3.* The employer shall contribute to the Health and Welfare Fund, the Pension Fund, the Industry Fund, and the respective sums listed in Article 17 for each compensable hour for all employees covered by this agreement.

. . .

*Section 5.* Each employer accepts as representatives of such employer the Employer Trustees currently serving on the Boards of the respective Trust Funds, and any successors thereto, who are selected in accordance with the terms of the respective trust agreements.

*Section 6.* The parties hereto agree to be bound by the terms and provisions of the respective trust agreements as now or hereafter amended.

. . .

*Section 9.* Recognizing the difficulty to determine the expense and damage to any fund resulting from the failure of any employer to pay any contribution by the 15th of the month as herein provided, the parties hereto therefore agree that any delinquent employer shall be liable for a surcharge to compensate the Funds for the damages due to such delinquency in an amount equal to ten percent (10%) of the amount of delinquent contributions and in addition to pay a legal rate of interest in the event legal action is taken to collect such contributions. In addition to the surcharge and interest thereon it is agreed that the employer shall be liable to pay a reasonable attorney's fee as follows: twenty percent (20%) of the amount due if collected prior to suit, filing of a lien or arbitration hearing, and thirty–three percent (33%) of the amount due if collected after commencement of suit, the filing of a lien or arbitration hearing is held. In the event suit is initiated it is agreed that such suits may be filed in a court of competent jurisdiction, state or federal, located in King County, Washington. . . .

*Section 10.* Each employer agrees to furnish such information and reports as may be required in the performance and administration of these various Funds. The trustees, or their representatives, of each of said funds shall have the right at all reasonable times during business hours to enter upon the premises of the employer to examine and copy such of the books, records, papers and reports of the employer relating to the hours and wages of employees as may be required to determine if the provisions of this agreement are being complied with. If it is determined that this collective bargaining agreement is not being complied with, then the costs of such examination shall be paid by the employer. Noncompliance would be the underpayment by either wages (including vacation pay and holiday pay) or any fund payments by five percent (5%) or more in the period audited.

It will be noted that the defendant in its answer concedes that payments were made under the agreement for the benefit of the single union employee that was hired. The question is raised whether the defendant was required under the agreement to contribute to the trust fund for all employees, union and nonunion alike.

■ Issues which are raised in suits to enforce rights arising out of a collective bargaining agreement are to be resolved pursuant to federal labor law. *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962); *Trust Fund Servs. v. Trojan Horse, Inc.,* 15 Wn. App. 140, 548 P.2d 344 (1976). *See* Labor Management Relations Act § 301(a), 29 U.S.C. § 185(a).

■■ Section 8(b)(2) of the National Labor Relations Act makes it illegal for a labor organization or its agents "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) . . ." 29 U.S.C. § 158(b)(2). Section 8(a)(3) of the act prohibits an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization". 29 U.S.C. § 158(a)(3).

If retirement benefits were made available only to union employees and not to nonunion employees, such a state of

affairs would encourage union membership. The encouragement or discouragement of membership is illegal under the National Labor Relations Act. Under the agreement signed by the parties and concededly complied with by the plaintiff in part, the employer was required to contribute to the Health and Welfare Fund, the Pension Fund, and the Industry Fund for all employees covered by the agreement. It was requisite to the validity of the agreement under the National Labor Relations Act that such benefits as were available from the agreements to union members were also to be available to nonunion members. *Minkoff v. Scranton Frocks, Inc.,* 181 F. Supp. 542 (S.D.N.Y.), *aff'd,* 279 F.2d 115 (2d Cir. 1960); *Penello v. International Union, United Mine Workers,* 88 F. Supp. 935 (D.D.C. 1950); *Smith v. General Elec. Co.,* 63 Wn.2d 624, 388 P.2d 550 (1964). The defendant was required to make payments to the trust funds for all employees, union and nonunion, covered by the agreement.

The defendant argues that he should have been allowed to testify that an oral agreement existed outside of the collective bargaining agreement. It is asserted that in order to prohibit the parol testimony concerning the alleged outside agreement dealing with nonunion employees, it must be assumed that the collective bargaining agreement covered the nonunion employees. We have answered this question in the affirmative, pointing out that the National Labor Relations Act requires that collective bargaining agreements cover union and nonunion employees alike. It follows that a side agreement cannot be entered into which would treat nonunion employees differently from the treatment of union employees. It would have been improper to permit oral evidence to vary the terms of the written collective bargaining agreement. The exclusion of such evidence is validly based upon two grounds. As pointed out in *Lewis v. Owens,* 338 F.2d 740, 742 (6th Cir. 1964), parol evidence is not admissible to establish that a provision of the written agreement was not to be binding. A concurring opinion stated in part:

I concur in the result reached by the majority opinion. The parol evidence rule is correctly stated and applied, and the case is decided upon a valid ground.

I would prefer, however, that the decision be based on national labor policy, rather than the parol evidence rule. As a matter of substantive labor law, we should not permit a written collective bargaining contract to be varied by evidence of a contradictory oral agreement. Gatliff Coal Co. v. Cox, 152 F.2d 52 (C.A. 6). . . .

The Supreme Court has placed collective bargaining contracts in a special class. . . . In United Steelworkers of America v. Warrior and Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, the Court said: "The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases * * *."
. . .

The purpose of written labor agreements is to settle questions which, if left unsettled, would lead to industrial strife. Variation of such written contracts by evidence of prior or contemporaneous oral agreements is contrary to national labor policy. In my opinion national labor policy requires that evidence of oral agreements be inadmissible to vary the provisions of written labor contracts.

*Lewis v. Owens, supra* at 743.

We agree and hold that the defendant was bound by the terms of the agreement it entered into for the term of the agreement and that it could not be varied by parol testimony nor expire other than by a modification achieved by following the requirements of federal labor law or by its own terms. *Trust Fund Servs. v. Heyman,* 88 Wn.2d 698, 565 P.2d 805 (1977).

CR 15 permits a party to amend his pleading by leave of court or by written consent of the adverse party after a responsive pleading has been served. The rule states that leave is to be freely given when justice requires. Following the argument on the motion for summary judgment and at the time of the hearing on the presentation of the order on the defendant's motion for reconsideration, an oral motion was made for permission to amend the defendant's answer which had been amended already once before. The

amendment which the defendant wished to make was to add an affirmative defense that the plaintiff did not have the capacity to sue. We find no error in the trial court's refusing leave to amend an answer at that stage of the proceedings. Certainly, sufficient time had passed since the commencement of the action for such a motion to have been timely made rather than made at a time when the normal course of the proceedings would be disrupted and the trial court required to retrace its steps and consider a motion which properly should have been presented to the trial court at the outset of the litigation.

CR 7(b) provides that motions which are not made during a hearing or trial are to be made in writing stating with particularity the grounds therefor and setting forth the relief sought. It was not error to deny an oral motion made to amend a pleading at the time of the presentation of an order granting or denying summary judgment. A motion to amend a pleading is not incidental to a motion for summary judgment and, when made at the time it was, was an untimely attempt to insert a new circumstance into the proceedings too late in the game. *See Hammond–Knowlton v. Hartford–Connecticut Trust Co.,* 26 F. Supp. 292 (D. Conn. 1939); *Davenport v. Davenport,* 4 Wn. App. 733, 483 P.2d 869 (1971); 3 L. Orland, Wash. Prac. 579 (2d ed. 1968). Further, raising the lack of capacity to sue at this late date by oral motion did not comply with the requirements of CR 9 and was untimely under CR 6(d). The trial court did not err in denying the motion to amend.

We find that the unresolved issues of fact that were presented to the trial court and are brought before us as preventing the entry of summary judgment are not relevant or material to the disposition of the cause. The second affidavit submitted by the defendant does not change the fact that the employees there referred to were employees of the employer, were within the scope of the collective bargaining agreement, and were required to be given the benefits of the agreement. The trial court did not err in ignoring the

second affidavit as it did not make any allegations which raised a *material* issue of fact.

We affirm the entry of a partial summary judgment.

The plaintiff has moved for attorney's fees on appeal, but has not complied with the provisions of RAP 18.1 by devoting a portion of its brief to the request. Accordingly, we remand the cause to the trial court for the determination of a reasonable award of attorney's fees. *Trust Fund Servs. v. Trojan Horse, Inc.,* 15 Wn. App. 140, 548 P.2d 344 (1976).

FARRIS, C.J., and WILLIAMS, J., concur.