WEST COAST STATIONARY ENGINEERS WELFARE FUND,
*Appellant,* v. THE CITY OF KENNEWICK,
*Respondent.*

*Burns & Meyer* and *Jack R. Burns,* for appellant.

*William L. Cameron, City Attorney,* for respondent.

COLEMAN, J.—West Coast Stationary Engineers Welfare Fund (Fund) appeals from an order granting summary judgment to the City of Kennewick, dismissing the Fund's complaint against the City. The Fund sought reimbursement for payment of increased insurance premiums for employee dental benefits. The trial court held that the participation agreement entered into by the City and the International Union of Operating Engineers, Local 280 (Union) controls their dispute over the increased premiums. The Fund contended, and continues to argue, that the collective bargaining agreement (CBA) between the City and the Union governs the dispute because the CBA obligates the City to maintain the employee dental benefits provided for in the CBA, while the participation agreement merely determines the initial contributions the City was required to make to the Fund. The Fund also argues that the trial court's award of attorney's fees to the City was improper. We affirm, and grant attorney's fees to the City on appeal.

The City and the Union entered into a CBA effective January 1, 1981, until and including December 31, 1983. The City and the Union later signed a "renewal participa-

tion agreement" which was accepted by the trustees of the Fund in May 1981. The participation agreement states that the City and the Union acknowledge that they are parties to the CBA, and that the CBA requires the City's participation in the Fund. The participation agreement further provides that the City and the Union accept the trust agreement establishing the Fund, and agree to be bound by the acts of the trustees under the trust agreement. In the participation agreement, the City contracted to make monthly contributions of $21.80 for the term of the CBA. The participation agreement does not indicate the purpose of these contributions, but monthly billings establish, and the parties do not dispute, that the payments were for dental insurance.

At the August 11, 1981 meeting of the Fund trustees, a consultant advised the board that the Fund's insurance company, United Benefit, had requested a 26.9 percent overall rate increase in premiums to maintain existing medical, vision, and dental coverages provided by the Fund. The trustees voted to accept the increase in order to renew the insurance contract, and to pass the increase on to participating employers. Between September 1, 1981 and July 1982, the Fund and the City exchanged correspondence arguing over the increase in dental premiums. On August 6, 1982, the Fund filed its complaint in this action, seeking to compel the City to pay the increased premiums. Both parties moved for summary judgment, and on September 13, 1982, the trial court granted summary judgment on behalf of the City. The City's request for attorney's fees was set forth in a cost bill which it filed on September 16, 1982. The Fund responded on September 26, 1982 with a motion to retax costs. The Fund argued that the City was not entitled to attorney's fees, asserting several theories. The court denied the motion to retax. Both the contract interpretation issues and questions relating to attorney's fees are before this court on appeal.

## ISSUES

1. Does the CBA and the participation agreement in which the City accepts the terms of the trust agreement give the trustees of the Fund the authority to increase the premiums for dental benefits and to pass that increase on to the City?

2. Was an award of attorney's fees properly included in the cost bill approved by the trial court?

As described above, the Fund believes that this dispute is controlled by the CBA. According to the Fund, section 8 of the CBA, which provides that there shall be no decrease in medical benefits for the life of the agreement, constitutes a maintenance of benefits provision. Thus, section 8 requires the City to pay any increased premiums in dental insurance for its employees. The City, however, argues that the CBA does not so provide, and that the provisions controlling the premium rates are contained in the participation agreement which sets forth the detailed basis upon which the payments are to be made.

█ In reviewing an order for summary judgment, an appellate court engages in the same inquiry as the trial court. The court must consider the evidence and all reasonable inferences from the facts in the light most favorable to the nonmoving party, in this instance, the Fund. To grant the motion, this court must find that there is no genuine issue as to any material fact. *Zehring v. Bellevue,* 99 Wn.2d 488, 493, 663 P.2d 823 (1983); *Rockey v. Western Conference of Teamsters Pension Trust,* 23 Wn. App. 248, 256, 595 P.2d 557, *review denied,* 92 Wn.2d 1023 (1979). Upon review we conclude that there are no genuine issues of material fact, and that the trial court correctly granted the City's motion for summary judgment.

█ Our Supreme Court has held that federal law governs the administration of a trust fund organized under the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5), "even though the initial validity of the collective bargaining agreement was determined by state law. *Trust Fund Servs. v. Heyman,* 88 Wn.2d 698, 565 P.2d 805 [*cert.*

*denied,* 434 U.S. 987 (1977)]." *Culinary Workers Local 596, Health & Welfare Trust v. Gateway Cafe, Inc.,* 95 Wn.2d 791, 795, 630 P.2d 1348, 642 P.2d 403 (1981), *cert. denied,* 459 U.S. 839 (1982). The Fund correctly claims that state courts must follow federal law, as fashioned by federal courts, to effectuate the statutory policy of enforcing collective bargaining agreements. *Trust Fund Servs. v. Heyman,* 88 Wn.2d 698, 704, 565 P.2d 805, *cert. denied,* 434 U.S. 987 (1977); *Western Wash. Cement Masons Health & Sec. Trust Funds v. Hillis Homes, Inc.,* 26 Wn. App. 224, 230, 612 P.2d 436, *review denied,* 94 Wn.2d 1014 (1980). Furthermore, the LMRA, 29 U.S.C. § 186(c)(5)(B), allows the Fund to accept payments from employers for the benefit of the employees, their families and dependents, when the "detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund . . ." The detailed basis upon which such payments are to be made may be specified in the CBA itself; however, when the language in the CBA is not sufficient to set forth the "detailed basis," a separate agreement is required. In the present case, the CBA did not specify a contribution rate or schedule for payments. Thus, the CBA did not satisfy the provisions of 29 U.S.C. § 186(c)(5)(B). Consequently, the City and the Union entered into a participation agreement as they were required to do to comply with the LMRA.

█ In order to determine the substance of the entire agreement reached by the parties to this appeal, we must examine both the CBA and the participation agreement. Courts presume that parties to an agreement have read all parts of the entire contract and intend what is stated in its objective terms.

As we read the cases which have developed the federal law with respect to the enforcement of written collective bargaining agreements, they impose a duty upon the parties to such agreements to read and understand them.

*Restaurant Employees Welfare Fund v. Rhodes,* 90 Wn.2d

162, 169, 580 P.2d 611 (1978); *Barclay v. Spokane,* 83 Wn.2d 698, 700, 521 P.2d 937 (1974) ("we are controlled by the objective manifestation of intent as expressed in the writing").

Here, the critical provisions of the CBA state:

*Section 7.* The City shall make available medical and hospital, life and dental insurance for its employees and shall pay the total premiums for such insurance to and including an amount for dependents through the term of this Contract.

*Section 8.* The City agrees that there shall be no decrease in medical benefits for the life of this Agreement.

By its plain language, the CBA obligates the City to make available medical and hospital, life and dental insurance for its employees, and to pay the appropriate premiums. Similarly, the City agrees in unambiguous language that there shall be no decrease in medical benefits for the life of the CBA. However, it is equally clear that the CBA distinguishes between medical and hospital benefits, and life and dental insurance. To the extent that section 8 is a maintenance of benefits provision, it applies only to medical benefits defined by section 7 as a special category. Thus, in order to sustain the Fund's position, we would have to find language in the participation agreement supporting the Fund's theory that the City must maintain dental benefits during the life of the CBA. The participation agreement is totally devoid of such language. The contribution formula is set forth under the "Basis of Participation" section, subdivision 2, which provides "Contributions to Commence Effective ____ January 1, 1981 ____ Rate Per Employee, Per Month ___ $21.80 ___ ". In the same section, subdivision 4, which provides for contribution rate changes during bargaining agreement, is not completed. As in the CBA, the language in the participation agreement is clear and unambiguous. The contribution formula is set at the rate of $21.80 per employee, per month. The parties never agreed to changes in the contribution rate during the life of the agreement. Absent a manifestation of intent to change the contribution

rate, and given the plain language contained in the CBA, the Fund cannot prevail on its claim.

 Federal courts have examined the question of the authority of trustees of employee benefit funds to increase contribution rates. In *NLRB v. Amax Coal Co.,* 453 U.S. 322, 69 L. Ed. 2d 672, 101 S. Ct. 2789 (1981), the United States Supreme Court held that the employer– and employee–selected trustees of a pension and welfare trust fund established under the LMRA, 29 U.S.C. § 186(c)(5), could not bargain among themselves to set the terms of the employer/employee contract; that function was for the employer and the employee. The Court held that trustees are not representatives for the purposes of collective bargaining. *Amax,* at 334.

> [T]rustees . . . can neither require employer contributions not required by the original collectively bargained contract, nor compromise the claims of the union or the employer with regard to the latter's contributions. Rather, the trustees operate under a detailed written agreement, 29 U. S. C. § 186 (c)(5)(B), which is itself the product of bargaining between the representatives of the employees and those of the employer.

(Footnote omitted.) *Amax,* at 336.

In *Central States, Southeast & Southwest Areas Pension Fund v. Chicago–St. Louis Transp. Co.,* 535 F. Supp. 476 (N.D. Ill. 1982), *aff'd,* 720 F.2d 681 (7th Cir. 1983), an employer and a union had entered into a collective bargaining agreement which, like the agreement here, did not spell out the terms of the contributions to employee benefit funds. The employer and the union had also signed more specific agreements which, like the participation agreement here, set the level of contributions to the funds. Eventually the union and the employer negotiated a rider containing a split–rate formula for fund contributions. In response, the trustees of one of the funds adopted a resolution authorizing and directing the fund to refuse to accept any agreement providing for split–rate contributions. The sum of the split–rate contributions was a lower amount than the full–

rate contributions would have been. The court held that the employer could not be required to pay contributions at a rate above that set forth in the rider to the agreement. Under the resolution, the trustees could refuse to accept the employer's contributions, but could not raise the split–level contribution rate. The court resolved the dispute over the split–rate contributions as follows:

> This controversy poses no real difficulty. For Pension Fund to override the unambiguous split–rate agreement negotiated by the parties, it can rely only on the Participation Agreement's provision by which Teamsters and Transport "agree to be bound by . . . all of the terms of the Trust Agreement . . . [and] all of the rules and regulations . . . *hereafter* adopted by the Trustees . . . pursuant to said trust Agreement. . . ." (emphasis added). Such a reading would be intolerable in contract terms. Contribution rates are set by collective bargaining, just as they were here. Trustees of the fund receiving the contributions may set regulations as to how their fund is run, but they have no delegated authority to change the pre-viously–negotiated rates unilaterally.

*Central States,* at 480. This discussion applies to the present case. To permit the Fund to unilaterally raise the contribution rate without explicit authority in the detailed participation agreement would have negative implications for the collective bargaining process.

A third federal case, *Enix v. Burrell,* 572 F. Supp. 1364 (S.D. Ohio 1983), involved an action brought by union trustees to arbitrate a dispute among the trustees of an employee pension trust fund. The dispute concerned an increase in the formula for calculating benefits under the pension plan. The court held that this was an administrative matter left to day–to–day management by the trustees, as opposed to an "extraordinary" matter which must be bargained over ,by the employer and the union. The court stated that "*contributions* . . . unlike *benefits* paid to Plan participants, are 'extraordinary' items governed by the collective bargaining agreement." *Enix,* at 1369. The distinction between extraordinary and day–to–day matters was

adopted from decisions of other federal courts, including *NLRB v. Amax.* Similarly, in the present case, although the administration of benefits may be left to the discretion of the Fund, the rate of contributions is a matter which must be negotiated by the City and the Union. There is no evidence in the participation agreement or the CBA that the City delegated to the Fund its authority to increase the contribution rate.

We now address the parties' contentions regarding attorney's fees. In the participation agreement, the City and the Union agreed to and accepted the terms, conditions and provisions of the trust agreement. See appendix. Section 10.04(c) of article 10 of the trust agreement provides for attorney's fees:

> [I]f any Employer becomes delinquent in the making of required contributions or payments, and if the Board consults legal counsel with respect thereto or files any suit or claim with respect thereto, there shall be added to the obligation of the Employer who is delinquent, reasonable attorney's fees, court costs and all other reasonable expenses incurred in connection with such suit or claim for collection. It is recognized that the cost of legal services and the expense necessary for the collection of delinquent contributions may have no relation to the actual dollar amount of the delinquent contributions which may be relatively small in a particular case.

RCW 4.84.330 authorizes an award of attorney's fees to the prevailing party in the following circumstances:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

Washington courts have previously awarded attorney's fees to the prevailing party in actions between trust funds and employers. In *Trust Fund Servs. v. Trojan Horse, Inc.,*

15 Wn. App. 140, 145, 548 P.2d 344, *review denied,* 87 Wn.2d 1009 (1976), the court allowed reasonable attorney's fees for the prevailing party (the fund) at trial and on appeal. The court's award was based on provisions for attorney's fees in the collective bargaining agreements. In *Western Wash. Cement Masons Health & Sec. Trust Funds v. Hillis Homes, Inc.,* 26 Wn. App. 224, 235, 612 P.2d 436, *review denied,* 94 Wn.2d 1014 (1980), the court awarded attorney's fees to the prevailing trust fund on appeal based on a provision for such fees in the trust agreement. As in this case, the labor agreement in *Hillis Homes* incorporated by reference parts of the trust agreement. *Hillis Homes,* at 226.

This is an action on a contract. The Fund has attempted to enforce what it believes to be a binding contractual provision in the CBA; that provision, the Fund argues, affects the City's contributions to the Fund. In its request to the trial court for attorney's fees, the Fund relied on section 10.04(c) of the trust agreement to support this claim. The parties to the contracts in question, *i.e.,* the CBA and the participation agreement, specifically agreed to accept the terms of the trust instrument. Had the Fund prevailed, it would have been entitled to attorney's fees. However, the City was successful in the action; therefore, under the language and policy of RCW 4.84.330, the City was entitled to an award of attorney's fees.

The City's failure to expressly plead RCW 4.84.330 is not fatal to its claim. In its answer, the City explicitly requested an award of reasonable attorney's fees. This request was sufficient to notify the Fund that the City was seeking attorney's fees pursuant to its contract with the Union. Furthermore, the Fund's argument the City was required to specifically plead attorney's fees under RCW 4.84.250[1] is unfounded. The City's claim to attorney's fees

---

[1]Former RCW 4.84.250 provides:

"Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20-.060, in any action for damages where the amount pleaded by the prevailing party

is not predicated upon that statute. Moreover, the purpose behind the specific notice requirement when a party seeks fees under the provisions of RCW 4.84.250 is inapplicable here. *See Tatum v. R & R Cable, Inc.,* 30 Wn. App. 580, 636 P.2d 508 (1981), *review denied,* 97 Wn.2d 1007 (1982). In contrast to the notice requirement when seeking fees under RCW 4.84.250, there is absolutely no authority supporting the position that one must specifically plead RCW 4.84.330 in order to recover attorney's fees under that statute. Our resolution of this issue on state law grounds makes it unnecessary to determine whether the parties were entitled to attorney's fees under 29 U.S.C. § 1132(g)(1).

■ Finally, there is nothing to prohibit a request for attorney's fees from being included in a cost bill. RCW 4.84.330 defines "prevailing party" as "the party in whose favor final judgment is rendered." While it may be preferable for the court to assess an attorney's fee request prior to entry of the final judgment, there is nothing to prevent this request from being raised in the cost bill. In fact, the statute could be construed as so requiring, based on the language defining "prevailing party" as the party which is successful after the final judgment is entered.

Even if it were error for the court below to award attorney's fees following the procedure used here, such error would be harmless in the circumstances of this case. As we stated, the City, in its answer, put the Fund on notice that it would be requesting attorney's fees. The claim for attorney's fees was supported by affidavit. The Fund had the opportunity to and in fact did object to the award. The Fund's argument that this procedure in effect shifted the burden of proof to the Fund is without merit. By raising its

---

as hereinafter defined, exclusive of costs, is three thousand dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees. After July 1, 1981, the maximum amount of the pleading under this section shall be five thousand dollars."

objection, the City was required to persuade the trial court that it was entitled to attorney's fees, and that its request was reasonable. The Fund argues, in essence, that costs do not normally encompass attorney's fees. That is the normal rule; however, fees may be awarded as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such fees. *Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 540, 585 P.2d 71 (1978); *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 797–98, 557 P.2d 342 (1976). In the present case, there is a contractual agreement providing for attorney's fees. That agreement contains no provision foreclosing the party from requesting attorney's fees in a cost bill.

The Fund contends that this matter should have been heard by the trial judge and not by another department of the superior court. The record does not indicate why the matter was not placed before the judge who heard the summary judgment motions; however, it is pure speculation that this procedure resulted in prejudice. The reasonableness of the fee does not appear to be the real issue. The dispute is actually over the City's entitlement to the fees. A judge other than the trial judge was certainly competent to decide this question as a matter of law.

The City has also requested attorney's fees on appeal, has filed an affidavit pursuant to RAP 18.1(c), and has complied with the other requirements of RAP 18.1. A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1. *Draper Mach. Works, Inc. v. Hagberg,* 34 Wn. App. 483, 490, 663 P.2d 141 (1983). Having concluded that the City was entitled to attorney's fees in the trial court, we find that it is entitled to attorney's fees on appeal.

The judgment of the trial court is affirmed. The City's request for attorney's fees on appeal is granted in the amount of $3,381.49.

## APPENDIX

### WEST COAST STATIONARY ENGINEERS WELFARE FUND
### PARTICIPATION AGREEMENT

THE UNDERSIGNED EMPLOYER AND UNION hereby acknowledge that they are parties to a duly executed Collective Bargaining Agreement which requires participation in the West Coast Stationary Engineers Welfare Fund.

TRUST OBLIGATION REAFFIRMED:

The Employer and Union agree to and accept the terms, conditions and provisions of the Trust Agreement (as amended and restated effective January 1, 1976) establishing the West Coast Stationary Engineers Welfare Fund and any amendments heretofore or hereafter adopted. The Employer and Union agree to be bound by the acts of the Trustees named in the Trust Agreement and their successors designated in the manner provided for under the Trust Agreement.

CONTRIBUTIONS TO BE HELD IN TRUST:

The Employer agrees that from the day an employee earns his right to contributions to these Trust Funds, to the day that contributions are actually received by the Trust Administrative Office, the Employer shall hold said sums as Trustee and In Trust for the benefit of the employees earning said contributions. The Employer further agrees that said sums are retained by the Employer for said period for administrative convenience.

BASIS OF PARTICIPATION: (To Be Completed by Local Union)

(1) Bargaining Agreement Effective ___ January 1, ___, 1981, Local No. _____.

(2) Contributions to Commence Effective ___ January 1, ___, 1981 Rate Per Employee, Per Month __ $21.80 __.

(3) Contributions Basis–All Hours: ____Worked ____Paid For ____ Other___ MONTHLY ___.

(4) Contributions Rate Changes During Bargaining Agreement:
Date _____ Rate _____
Date _____ Rate _____

(5) Bargaining Agreement Termination Date: _____ December 31, 1983 ____.

(6) Renewal Participation Agreement __ X __ New Participation Agreement _____

(7) The Employer and Union request participation of the following employees not covered by the Collective Bargaining Agreement: (Identify Classification and Name of Persons Intended To Be Covered)

(8) _____ Employer is a sole proprietorship. Correct name of owner is:

_____ Employer is a partnership. Correct names of partners are:

_____ Employer is a corporation. Correct names of the officers are:

President Secretary

TERM OF AGREEMENT:
This Agreement shall continue and the contributions specified herein shall be in effect for the term of the Collective Bargaining Agreement and any extensions, amendments, modifications or renewals thereof, or any substitute or successor agreements thereto unless otherwise specified.

DATED at _____ this _____ day of _____, 19__.

LOCAL UNION: COMPANY (EMPLOYER):

INTERNATIONAL UNION
OF OPERATING ENGINEERS—
LOCAL UNION No. 280 CITY OF KENNEWICK
Name of Union Name of Company

By E. W. "Bill" Clifford P. O. Box – 6108 (210–West 6th.)
Signature, Title Street Address
 Business Representative

E. W. "BILL" CLIFFORD KENNEWICK, WASHINGTON – 99336
Name: Printed or Typed City Telephone

 By Greg Cuoio
 Signature, Title

 Name: Printed or Typed

ACCEPTED by the undersigned Trustees of the West Coast Stationary Engineers Welfare Fund.

Robert Nelsen L. L. Baggett
Employer Trustee Employee Trustee
5/1/81 5–18–81
Date Date

MAIL ALL COPIES TO: Trust Fund Manager, Associated Administrators,

480

Inc., 618 Vance Building, Seattle, Washington 98101. Copies of the amended and restated Trust Agreement may be obtained from the Trust Fund Manager at the above address.

(This Participation Agreement shall be retained by the Administrator, one copy returned to the Employer, and one copy returned to the Union.)

SWANSON and RINGOLD, JJ., concur.