# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| BORDAK BROTHERS, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC COAST STUCCO, LLC,<br><br>Defendant. | No. 72317-1-I<br><br>DIVISION ONE |
| LEDCOR INDUSTRIES (USA), INC., a Washington corporation,<br><br>Appellant,<br><br>v.<br><br>SQI, INC., a Washington corporation; SCAPES & CO., INC., a Washington corporation; BORDAK BROTHERS, INC., a Washington corporation; UNITED SYSTEMS, INC., a Washington corporation; THE PAINTERS, INC., a Washington corporation; COATINGS UNLIMITED, INC., a Washington corporation; EXTERIOR METALS, INC., a Washington corporation; SKYLINE SHEET METAL, INC., a Washington corporation; and ROESTEL'S MECHANICAL, INC., a Washington corporation,<br><br>Defendants,<br><br>STARLINE WINDOWS, INC., a Washington corporation,<br><br>Respondent. | UNPUBLISHED<br><br>FILED: October 5, 2015 |

COX, J. — Ledcor Industries (USA) Inc. appeals three successive summary judgment orders granting relief to Starline Windows Inc. There are no genuine issues of material fact for any order. Starline is entitled to judgment as a matter of law for each order. We affirm. We also deny Starline's motion to dismiss Ledcor's appeal as untimely.[1]

This is a construction defect action that arises from the Admiral Way mixed-use project. That project was substantially completed in April 2003.

Admiral Way LLC (Admiral) was the developer. Ledcor was the general contractor. Ledcor hired Starline to supply window products for the project.

After the project was completed, the Admiral Condominium Owners Association (COA) discovered defects in the building and sued Admiral, the developer. Admiral impleaded Ledcor. Ledcor then commenced this action against its subcontractors and suppliers. Ledcor did not initially include Starline in this action.

Ledcor tendered defense and indemnity to Starline for the claim based on the window products it supplied for the project. Ledcor also encouraged Starline to contact the COA to "negotiate an issue release that absolves Starline and [Ledcor] from any liability in any way related to the Starline products."[2]

Ledcor also informed the COA that only the COA could make claims against Starline. In its correspondence with the COA, Ledcor stated:

> Also, please let us know if (and when) you anticipate amending your Complaint to add claims against Starline. Please note that it is

---

[1] RAP 2.2(d) and 5.2.

[2] Clerk's Papers at 163 (emphasis omitted).

our position that such claims can only be made by the [COA] and that any damages that could (or should) be recovered by the [COA] from Starline are not recoverable from our client. Accordingly, we are not pursuing any claims against Starline.[3]

The COA then amended its complaint to assert claims directly against Starline. Thereafter, Starline negotiated a settlement with the COA, as Ledcor requested. Under the terms of the written settlement agreement, Starline paid the COA $165,000 for release of claims. The settlement included an "Issue Release" clause that "satisfie[d] and release[d] all of [the COA's] claims against *all parties* to the litigation arising from the alleged defective design and/or defective manufacture of STARLINE's *window products*."[4]

Subsequently, Ledcor also settled with the COA. Ledcor and its insurer agreed to pay the COA $2,700,000 to settle the claims against it.

After this settlement, Ledcor amended its complaint in this action to join Starline as a defendant. Ledcor asserted claims under the Washington Products Liability Act and for breach of the purchase order agreement between the parties. Ledcor sought indemnity and an award of its defense expenses.[5] It also pled as remedies equitable subrogation, equitable indemnity, and contribution.[6]

---

[3] Id. at 157-58 (emphasis omitted).

[4] Id. at 181 (emphasis added).

[5] Id. at 24-26.

[6] Id. at 26.

Starline moved for summary judgment. The court granted Starline's motion on Ledcor's claims with two specific exceptions.[7] The court left pending as "the only claims to be litigated" Ledcor's claim for defense costs and the claim for breach of the duty to name it as an additional insured on Starline's policy.[8]

We granted discretionary review of the trial court's dismissal of Ledcor's indemnity claims against its subcontractors and affirmed in an unpublished decision.[9] In that decision we stated:

> We note that, on appeal, Ledcor and Admiral do not argue that the trial court erred in dismissing the *indemnity claims* against Starline. Therefore, any argument that summary judgment was not proper for Starline is waived.[10]

There was no further review of that decision.

On remand following this court's decision, the trial court granted summary judgment to Starline on Ledcor's two remaining claims. Specifically, it granted summary judgment on the duty to insure claim. The court also granted summary judgment on the duty to defend claim, assessing $19,101.20 of Ledcor's defense expenses against Starline.

Ledcor appeals all three summary judgment orders.

---

[7] Id. at 2180-82.

[8] Id. at 2182.

[9] Bordak Bros. v. Pac. Coast Stucco, LLC, noted at 169 Wn. App. 1008, 2012 WL 2510956.

[10] Id. at *7.

## INDEMNITY CLAIMS

Given this case's factual and procedural complexities, we first clarify that Ledcor's indemnity claims are not before us. That is because the law of the case doctrine bars considering these claims in this second review.

The term "law of the case" "means different things in different circumstances."[11] Here, we refer to "'the rule that questions determined on appeal or questions which might have been determined had they been presented, will not again be considered on a subsequent appeal in the same case.'"[12]

In this case, Ledcor sought review of a decision on its indemnity claims against its subcontractors.[13] In that review, we noted that Ledcor failed to argue "that the trial court erred in dismissing the indemnity claims against Starline."[14] Thus, Ledcor waived any argument that summary judgment on the indemnity claim was not proper.[15] Accordingly, we affirmed that portion of the summary judgment order.[16]

---

[11] Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005).

[12] State v. Bailey, 35 Wn. App. 592, 594, 668 P.2d 1285 (1983) (quoting Davis v. Davis, 16 Wn.2d 607, 609, 134 P.2d 467 (1943)).

[13] Bordak Bros., 2012 WL 2510956 at *2.

[14] Id. at *7.

[15] Id.

[16] Id. at *8.

Because Ledcor waived this issue in the prior review, it cannot now challenge summary judgment on this claim. Accordingly, we do not consider any challenges to the court's dismissal of Ledcor's indemnity claim.

In this appeal, Ledcor is less than clear in describing what claims it argues. For example, its briefing mentions "independent contractual and equitable claims" without explaining exactly what this means. Accordingly, in the remaining portions of this opinion, we discuss the claims that the various orders before us address. To the extent the assignments of error or argument address other matters, they are simply not properly before us.

## CLAIMS OTHER THAN INDEMNITY

Ledcor challenges the summary judgment order entered on October 25, 2010. There are no genuine issues of material fact for the claims addressed by this order. Starline is entitled to judgment as a matter of law.

This order granted summary judgment to Starline and denied Ledcor's cross-motion for summary judgment. It also expressly reserves for further litigation Ledcor's claim for defense costs and the claim for breach of the duty to name Ledcor as an additional insured on Starline's policy

### *"Issue Release"*

Ledcor argues that summary judgment was improper on the claims against Starline that were the subjects of this motion. We disagree.

One of the grounds on which Starline based its summary judgment motion was the settlement agreement with COA that released claims against all parties

to the litigation. Thus, the effect of that agreement on Ledcor's claims against Starline is a legal question before us.

"'A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"[17] Summary judgment is appropriate "if reasonable minds could reach only one conclusion from the evidence presented."[18]

"[S]ettlement agreements are contracts."[19] "Contract interpretation is a matter of law."[20] "During interpretation, a court's primary goal is to ascertain the parties' intent at the time they executed the contract."[21] Undefined terms in a contract are "given their 'plain, ordinary, and popular meaning.'"[22] After interpreting a contract, we determine its legal effect.[23]

Here, after Starline settled with the COA, the COA had no claims against Ledcor based on Starline's window products. Thereafter, when the COA settled

---

[17] Wash. Fed. v. Harvey, 182 Wn.2d 335, 340, 340 P.3d 846 (2015) (quoting Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)).

[18] Bostain v. Food Exp., Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007).

[19] Jackson v. Fenix Underground, Inc., 142 Wn. App. 141, 146, 173 P.3d 977 (2007).

[20] Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 282, 313 P.3d 395 (2013).

[21] Id.

[22] Id. at 284 (quoting Queen City Farms v. Central Nat. Ins. Co of Omaha, 126 Wn.2d 50, 66, 882 P.2d 703, 891 P.2d 718 (1994)).

[23] Id. at 288.

No. 72317-1-I/8

with Ledcor, the COA had no remaining claims based on Starline's window products. Thus, the court appropriately granted summary judgment in favor of Starline.

Starline's settlement with the COA included an "Issue Release" clause.[24] This clause read:

> [The COA] hereby agrees that this Settlement Agreement and Release of Claims satisfies and releases *all* of [the COA's] claims against *all parties* to the litigation arising from the alleged defective design and/or defective manufacture of STARLINE's window products at [the project], including claims for breach of express and implied warranties and claims under the Washington Products Liability Act. Specifically excluded from this Settlement Agreement and Release of Claims are any of [the COA's] claims against [the developer] and/or [Ledcor] for those parties' improper specification, installation, alteration, modification or repair of STARLINE's window products at [the project].[25]

The plain language of this release indicates that the COA released all of its claims "*against all parties* to the litigation *arising from* the alleged defective design and/or defective manufacture of STARLINE's window products."[26] This broad language included the COA's claims against Ledcor based on Starline's defective window products. The only window claims that were excluded were those related to Ledcor's "improper specification, installation, alteration, modification or repair" of Starline's window products.[27]

---

[24] Clerk's Papers at 181.

[25] Id. (emphasis added).

[26] Id. (emphasis added).

[27] Id.

8

Thus, when Ledcor subsequently settled with the COA, the COA no longer had any claims against it based on Starline's allegedly defective window products. Accordingly, the court appropriately dismissed all of Ledcor's claims against Starline, apart from those specifically reserved for future litigation in the summary judgment order.

Ledcor argues that the court misinterpreted the scope of the issue release. This argument is without merit.

First, Ledcor argues that Starline's settlement involved only windows, and did not include the vinyl doors and specifications that Starline supplied. The settlement releases all claims "arising from the alleged defective design and/or defective manufacture of STARLINE's *window products*."[28] Ledcor argues that "window products" means windows, and necessarily excludes other things Starline provided.

But this argument essentially reads the word "products" out of the settlement agreement. We decline to do so. "Window products" is broader than mere "windows." Moreover, to the extent extrinsic evidence is required to give further meaning to these words, that evidence has been provided by Starline, one of two parties to that agreement. Ledcor, who was not a party to that agreement, fails to point to any contrary extrinsic evidence.

Second, Ledcor argues that the issue release covered only a narrow warranty claim. Ledcor argues that the only claim the COA could have brought

---

[28] Id. (emphasis added).

9

against Starline was based on "a limited manufacturer's warranty covering repair or replacement only." Ledcor argues that it could bring much broader claims against Starline, including claims for consequential damages.

But the plain words of the issue release are far broader. The provision covers "claims against all parties to the litigation *arising from* the alleged defective design and/or defective manufacture of STARLINE's window products at [the project], including claims for breach of express and implied warranties and claims under the Washington Products Liability Act."[29] Thus, the release was not only for claims the COA could directly bring against Starline—it also included claims the COA could bring against Ledcor. Thus, the claims released were much broader than a limited manufacturer's warranty.

It is ironic that Ledcor now takes the position that the settlement agreement between the COA and Starline fails to completely resolve all claims against Ledcor that arise from Starline providing window products to the project. Earlier, Ledcor asked Starline to reach a settlement with the COA to resolve such claims. From our point of view, that is exactly what Starline did.

Finally, Ledcor argues that there were some claims only it could bring against Starline. Ledcor is correct, but the court did not dismiss these claims. The claims that only Ledcor could bring—claims about Starline's duties to defend and insure Ledcor—survived summary judgment by the express terms of the court's order.

---

[29] Id. (emphasis added).

Because we affirm the court's order based on the issue release, we need not reach Starline's alternative grounds for summary judgment. Likewise, we do not reach Starline's other arguments on appeal.

In sum, the trial court properly granted summary judgment for the claims at issue, reserving only two for further litigation.

## DUTY TO INSURE

In its notice of appeal, Ledcor also noted the summary judgment order dismissing its claim on the duty to insure. Because Ledcor fails to provide any substantive argument on this issue, we deem it abandoned.

A party waives a claim of error by offering no argument on the claimed error in its opening brief.[30]

Here, Ledcor makes no substantive argument about Starline's alleged breach of the duty to insure. Further, Ledcor concedes that "[Starline's insurer] had acknowledged Ledcor was an additional insured on its Starline CGL policies . . . ."[31]

## DUTY TO DEFEND

Ledcor also appeals the summary judgment order on its final claim—the duty to defend. There are no genuine issues of material fact, and Starline was entitled to judgment as a matter of law.

---

[30] Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).

[31] Brief of Appellant Ledcor Industries (USA) Inc. at 11 n.1.

Ledcor claims there is a genuine issue of material fact—the amount of its defense expenses as damages for the breach of the duty to defend. On this record, we disagree.

Here, the trial court decided that Ledcor "ha[d] elected to use the proportionate share method to allocate its defense costs among its subcontractors and suppliers."[32] Ledcor does not challenge this decision.

This court approved the "proportionate share approach" in Ledcor Industries (USA) Inc. v. Mutual of Enumclaw Insurance Co.[33] In that case, the trial court ordered a subcontractor to pay the portion of the contractor's defense costs that were attributable to that subcontractor's work.[34] The costs arising from the subcontractor's work were not segregated from costs incurred based on other subcontractors' work.[35] Thus, the trial court determined the subcontractor's share of the defense costs with "a proportionate share approach."[36]

This approach was a two-step process.[37] First, the court compared the amount of the subcontractor's settlement with the contractor to the amount of the contractor's settlement with the developer.[38] The court calculated that the

---

[32] Clerk's Papers at 2189.

[33] 150 Wn. App. 1, 15, 206 P.3d 1255 (2009).

[34] Id.

[35] Id.

[36] Id.

[37] Id.

[38] Id.

12

subcontractor's settlement was 18.8 percent of the contractor's settlement.[39] Accordingly, the court ordered the subcontractor to pay 18.8 percent of the defense costs.[40]

Here, the trial court followed these principles. It calculated Starline's proportionate share using the method described earlier. The court first calculated the total settlement paid to the COA by adding Ledcor's settlement with the COA to Starline's settlement with the COA. The court determined that this was $2,865,000. The court then divided the amount of Starline's settlement—$165,000—by that number. With these calculations, the court calculated that 5.76 percent of the defense costs were attributable to Starline. Ledcor does not dispute that this was the amount of the settlements or that the court correctly calculated the percentage.

Thus, there was no genuine issue of material fact as to the amount of damages. Ledcor had elected to use the proportionate share method. The court merely calculated the amount due under that method based on undisputed facts. Accordingly, the court did not err by determining the amount of damages on summary judgment.

Ledcor argues that the court unconstitutionally invaded the province of the jury by determining the amount of damages. On this record, this argument is unpersuasive for the reasons we just discussed.

---

[39] Id.

[40] Id.

13

In its reply brief, Ledcor argues that the court should have used a value other than Starline's settlement to calculate Starline's share of the costs. Because this is an argument first made in a reply brief, we need not address it.[41]

## ATTORNEY FEES

### *Trial Court*

Starline appealed the trial court's order denying fees to both parties in a separate, linked appeal. We addressed that challenge in our decision in that appeal.[42]

### *On Appeal*

Both parties seek fees on appeal based on their contract. Because Starline is the prevailing party on appeal, we award it fees, subject to its compliance with RAP 18.1.

Parties in Washington may recover attorney fees if a statute, contract, or recognized ground of equity authorizes the award.[43] "'A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1.'"[44]

---

[41] In re Marriage of Bernard, 165 Wn.2d 895, 908, 204 P.3d 907 (2009).

[42] Ledcor Indus. (USA), Inc. v. Starline Windows, Inc., noted at ___ Wn. App. ___, 2015 WL 4533933.

[43] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014).

[44] Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009) (quoting W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985)).

Here, the parties' contract states:

In the event that arbitration and/or litigation is instituted to enforce [or] contest the provisions of this Agreement or adjudicate any question(s) arising under this Agreement, the prevailing party shall be entitled to its actual attorneys' fees and all costs incurred in connection therewith.[45]

Starline prevails in this appeal. Thus, it is entitled to a reasonable attorney fees award.

We affirm all summary judgment orders on appeal. We award Starline attorney fees on appeal, subject to its compliance with RAP 18.1.

Cox, J.

WE CONCUR:

Spearman, C.J.

Appelwick, J.

---

45 Clerk's Papers at 92.